# WIGGINS FERRY COMPANY

*v.*

## OHIO AND MISSISSIPPI RAILWAY COMPANY.

1.   CONTRACTS—*in restraint of competition in trade to be strictly construed.* Contracts which are, to a greater or less degree, in restraint of competition in trade, will be strictly interpreted as against the party complaining of their infraction, and will not be enlarged beyond what is written.

2.   CONTRACT CONSTRUED—*as to exclusive right of ferry company to carry freight and passengers for railway company.*   A contract between a railway company and a ferry company, bound the railway company to employ the ferry company to transport for it across the Mississippi river, at St. Louis, all persons and property which should be taken across the river either way by the railway company, to or from Bloody Island, either for the purpose of being transported on the road eastward, or which had been brought to the river over the road, destined to St. Louis or points beyond:   *Held,* that the operation of the contract was confined to the territorial limits of Bloody Island, and that the railway company was not prohibited from extending their track to another point on the river, and then employing another ferry to transport passengers and freight across the river, from such point to St. Louis and from St. Louis to such point.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. WILLIAM H. UNDERWOOD, for the appellant.

Messrs. G. & G. A. KŒRNER, and Mr. H. P. BUXTON, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The contract upon which this action is based, was between the Wiggins Ferry Company and the Ohio and Mississippi Railway Company. Both companies were created corporations under the laws of this State.

It is averred the present defendant is the successor and assignee of the former company, and is now in possession, operating the road.

The obligation upon which breaches have been assigned is supposed to arise out of the third paragraph of the written contract, which binds the railway company to employ the ferry company to transport for it across the Mississippi river, at St. Louis, all persons and property which may be taken across the river either way by the railway company, to or from Bloody Island, either for the purpose of being transported on its road eastward, or having been brought to the river over its road, destined to St. Louis or points beyond.

Two principal breaches are assigned: First, that defendant, in disregard of its duty, wrongfully, and without the consent of plaintiff, brought freights in cars from St. Louis to its depot at East St. Louis, by the way of Venice, a village two miles above East St. Louis, on a rival ferry; and, second, defendant caused freights in cars, received over its road, to be transported from East St. Louis to the city of St. Louis across the river at Venice, on a rival ferry, in violation of the terms of the agreement. The questions made, all arise on demurrer.

Waiving any discussion of the authority of the respective companies, under their charters, to make the contract, and the liability thereunder of the defendant, as the successor and assignee of the former company, we deem it material only to consider such questions as have relation to the construction of the agreement.

Contracts of the character of the one we are considering, are, to a greater or less degree, in restraint of competition in trade, and where a recovery is permitted, the party complaining of an infraction will be held to a strict interpretation of the agree-

ment.   Obviously, the obligation, from considerations affecting
the public welfare, will not be enlarged beyond what is written.
The policy of the law would be to confine within narrower
limits, rather than extend the restrictions imposed.

The right of recovery is based on the theory, it is obligatory
upon the railway company, under the contract, to employ the
ferry company to transport all passengers and freights which it
should receive for its road from St. Louis, to be sent eastward,
and to transport all passengers and freights which it should
bring over its road bound westward for St. Louis.   Should this
construction prevail, it would be the duty of the railway com-
pany to employ the ferry company to transfer all freights on
its road, whether received from or beyond, or destined to or
beyond St. Louis.

The contract contains two limitations:   First, the passengers
and freights to be carried were "to or from Bloody Island;"
and, second, "to or from St. Louis."   We are unwilling, by
construction, to enlarge the agreement beyond what the parties
have fairly expressed by the language employed.   There is
nothing in the contract, unless it arises by implication, that
prohibits the railway company from extending its track to
Venice, or any other point, however distant, and crossing freights
and passengers there for St. Louis or points beyond.   No limi-
tation in this regard has been created by express agreement of
the parties, and there is nothing that makes it imperative on
us to declare any arises by implication.   The agreement, as to
passengers and freights to be carried over the ferry, is "to or
from Bloody Island," and "to or from St. Louis."   Unless we
enlarge the undertaking of the railway company beyond what
is expressed by the terms employed, the breaches assigned are
not upon any duty imposed by the contract.

Reference is made to the words, "so that  *  *  *  the
owners of the said Wiggins Ferry shall have the profits of the
transportation of all passengers and property taken across the
said river either way,  *  *  *  to or from the city of St.
Louis," as enlarging the obligation of the railway company, as
first expressed.   This whole clause of the agreement must be

WALKER, CH. J., and BREESE and SCHOLFIELD, J.J., dissenting.

construed together. When that is done, it is apparent reference is had to only such passengers and property as should be taken across the river "to or from Bloody Island" and "to or from St. Louis." This view is strengthened by the further provision, that the rates of ferryage charged shall be as low as to any other party between St. Louis and Bloody Island. Having confined the operation of the contract to the territorial limits of Bloody Island, we have neither the authority nor the inclination to make it include points not named or not necessarily included by the language employed, nor within the contemplation of the parties.

The cases cited by counsel for appellant are not analogous, and in no manner illustrate the meaning of the contract.

According to our understanding of the contract, we need not discuss the graver questions suggested, viz: whether the contract, so far as the public are concerned, is void, as being in contravention of a sound public policy, or whether it is valid as between the contracting parties, notwithstanding it may be *ultra vires*. We rest our decision on the distinct ground the facts averred show no infraction of the agreement.

The judgment must be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE WALKER, Mr. JUSTICE BREESE, and Mr. JUSTICE SCHOLFIELD, do not concur in this opinion. They hold that, by a fair construction of the third clause of the contract of these parties, the ferry company, in consideration of the valuable grant of land and privileges to the railway company, became entitled to all the freights and passengers which might be brought by this railway to or from St. Louis, and from which the railway company had no power to divert them.