David E. Ginsburg, Appellant, v. John Warczak et al., Appellees.

Gen. No. 43,659.

90

Opinion filed November 20, 1946. Rehearing denied December 4, 1946. Released for publication December 5, 1946.

HARRY E. KOPALD, of Chicago, for appellant; MORRIS K. LEVINSON, of Chicago, of counsel.

PHILIP A. FLEISCHMAN and MAURICE L. DAVIS, both of Chicago, for appellee; MAURICE L. DAVIS, of Chicago, of counsel.

MAYER GOLDBERG, of Chicago, for certain appellees; LEONARD L. LEVIN, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On March 26, 1945, David Ginsburg filed a complaint in the circuit court of Cook county against John Warczak for an injunction for damages and for other relief grounded upon a written contract between them for the sale of corporate stock and good will in a planograph business. Plaintiff alleged that he was induced to sign the contract upon fraudulent oral representations by defendant that he (defendant) would not enter into competition for one year with the business he (defendant) was selling, nor solicit the business of the customers, nor employ or entice the employees of the business for that period. By amendment plaintiff also asked for reformation of the contract to include two paragraphs embracing the alleged oral provisions. These had been "deleted" at the time of the signing of the written contract. Plaintiff alleged that defendant orally agreed to abide by the deleted provisions before and at the time of the signing of the contract. A motion to strike the complaint was denied. Defendant answered, admitting the written agreement, denying the allegations of fraud and denying any oral agreement. Defendant asserted that plaintiff was not entitled to injunctive relief, or to have the agreement reformed. The court granted a temporary injunction as prayed. The case was referred to a master in chancery, who, after hearing testimony, reported that plain-

tiff sustained the material allegations of his complaint and recommended the entry of a decree granting the relief prayed. The court sustained exceptions to the master's report and entered a decree dissolving the temporary injunction, allowing defendant 20 days in which to file suggestions for damages, retaining jurisdiction to consider such suggestions, discharging a rule to show cause why defendant and seven other persons should not be punished for contempt of court, and dismissing the complaint for want of equity at plaintiff's costs. Plaintiff appealed.

Plaintiff was 80 years of age. Defendant is, to quote the master, "much younger and very aggressive." As partners, they engaged in the planograph business for 16 years. The partnership was dissolved and a corporation formed to take over the business. The corporation, known as the Chicago Aligraphy & Lithographing Company, Inc., was formed about five years before the complaint was filed. The corporation took over the business formerly operated by the partners. The total capital stock issued consisted of 500 shares and each former partner owned 250 shares. One of plaintiff's sons had been in the employ of the corporation. He went into the military service. There was evidence that before going into the service this son had threatened to "put defendant out of business." For this reason, and also because the son would quarrel with the employees, defendant refused to permit him to return as an employee of the corporation on being discharged from the army. The refusal of defendant to permit the re-employment of plaintiff's son brought on quarrels between plaintiff and defendant. Defendant also wished to have the right to sign checks on the corporate bank account. Plaintiff refused to permit this. There were other differences between them. As a result, discussions took place between them about buying out each other's interest in the corporation.

About the middle of September 1944 defendant offered to either pay plaintiff $25,000 for plaintiff's shares in the corporation, or to sell his own shares to plaintiff for $22,500. Plaintiff elected to purchase. In the middle of October 1944 plaintiff's then attorney, at plaintiff's direction, prepared a seven or eight page agreement between the parties covering the sale of defendant's stock. The agreement, as drawn, included a provision forbidding defendant from going into the same line of business as the corporation for a period of three years. Plaintiff testified that the parties had not discussed any three year limitation prior to the preparation of the agreement. He also testified that he told defendant that he would not buy defendant's shares unless defendant agreed, for a three year period, not to do any "dirty work." Defendant refused to sign the agreement. On the morning of October 30, 1944 plaintiff and defendant again discussed the sale to plaintiff of defendant's shares. Defendant was ready to sell. At plaintiff's direction, plaintiff's attorney prepared an agreement covering the transaction to be effected between the parties, for execution. There was then no discussion between the parties as to the terms of the agreement. The price of $22,500 was that which had been agreed upon two weeks before. Plaintiff's attorney had practiced law since 1926. He had known plaintiff for 37 years. Defendant, at the meeting with plaintiff and the latter's attorney, when the agreement was presented to defendant for execution, was unable to get in touch with his own attorney; was told he did not need an attorney; but insisted on taking the agreement to Mr. McLeod, an official of the Northern Trust Company, where the corporation maintained its bank account, in order that the agreement might be read to defendant. Defendant wished someone who understood the agreement to read it over. The record is silent as to whether Mr. McLeod was an attorney. The agreement, as drafted by plaintiff's

attorney, provided for the sale by defendant to plaintiff of 250 shares of stock of the corporation, together with all of the property, good will, assets, accounts receivable, profits and bank accounts of the corporation, at a price of $22,500. The proposed agreement also provided that all past due dividends on the stock were to belong to plaintiff; obligated plaintiff to effect, the discharge of the current debts of the corporation and state and federal taxes payable by the corporation; provided that defendant's position as an officer and director of the corporation be at once terminated; provided that defendant would not interfere with the good will of the corporation, and would not, for one year, solicit the business of customers of the corporation; and further provided that defendant would not employ any of the present employees of the corporation, or engage in business competitive to that of the corporation, for a period of one year. ·After Mr. McLeod read the draft of the agreement aloud to defendant, the latter stated that he would not sign it unless two paragraphs were stricken out, these being the paragraphs which provided that defendant would not interfere with the good will of the corporation, or solicit the business of its customers, or hire its employees, or engage in a competitive business. Mr. McLeod struck out the two paragraphs which were objectionable to defendant, wrote the word ''deleted'' opposite each such paragraph, and both plaintiff and defendant wrote their signatures under the word ''deleted'' in each of the two places where the word was written. The agreement was then executed by the parties.

Plaintiff's witnesses testified that defendant, prior to the time of the execution of the agreement and at the time of its execution, orally agreed that he would not do the things forbidden by the two paragraphs which were deleted from the agreement at defendant's insistence. These witnesses were the plaintiff, the at-

torney for plaintiff in the transaction, and Ada Sabo, plaintiff's daughter, who furnished him with $10,000 towards the purchase. Defendant denied making the oral agreement. In this denial he was corroborated by his brother-in-law, Clarence Haack, who was present when the transaction was closed. The attorney for plaintiff testified that he had included the two deleted paragraphs in the agreement as drafted by him because he considered them important, and that plaintiff would not have purchased defendant's stock without defendant's agreement not to engage in a competitive business. This attorney admitted he was familiar with the parol evidence rule at the time defendant made his supposed oral agreement to perform the deleted parts of the written agreement. About two months after the sale defendant commenced looking for space in which to engage in the planograph business and entered into such business no later than January 1, 1945.

Plaintiff knew, prior to January 1, 1945, that defendant had gone back into the planograph business. Plaintiff continued the operation of the corporation until the time of the hearing of the suit, and still operates such business. After plaintiff learned that defendant was back in the planograph business, plaintiff did not communicate with defendant, and has not talked to defendant, or directed anyone to talk to him, from then until the time plaintiff testified. Plaintiff did not at any time go to defendant with the shares of stock he had purchased and ask for his money back and did not offer the stock to defendant. On July 11, 1945 an order of temporary injunction was entered on plaintiff's motion, restraining defendant from engaging in the planograph business; from employing persons who had been employed by the corporation; from soliciting business from the customers of such corporation; and from communicating with such customers. This injunction was modified on July 14, 1945 so as to omit the restraint upon defendant from engaging in

the planograph business, but preserving substantially the remaining provisions of the order of July 11, 1945.

On July 25, 1945 plaintiff filed a petition for a rule to show cause, directed against defendant and Phillip K. Mendelson, Clarence Haack, Steve Antczak, Stella Budney, George Levin and Mary Melek. In his petition plaintiff charged that defendant still continued in the planograph business, solicited the business of customers of plaintiff's corporation, and employed persons who had been employed by such corporation. Defendant, answering, stated that he was not present in open court when the order was entered; that he was not served with the writ of injunction; that he had on July 13, 1945 sold his interest in his planograph business to Clarence Haack, his brother-in-law, who, at that time, was his partner in such business and operated under the name of Mutual Planograph Company. As to the other respondents, the petition alleged that they had actual knowledge and notice of the entry of the injunctional order of July 14, 1945; that they wilfully and knowingly violated the order in that they continued to solicit the customers and business of plaintiff's corporation and continued to maintain their employment with defendant. Respondents filed answers in which, among other allegations, they set up that they were not parties and that no injunction was directed against them.

Plaintiff contends that defendant agreed, orally, when executing the written agreement, that the provisions of the two paragraphs which were deleted therefrom, at the time it was executed, would remain in full force and effect as a binding oral agreement. Under the provisions of the deleted paragraphs the defendant would be burdened with the additional obligation of not interfering with the good will of the corporation, of not engaging in the same line of business as the corporation for one year, of not soliciting the business of customers of the corporation, and of not hiring any of the employees of the corporation

for a period of one year. Plainly, the oral undertaking would vary and add to the terms of the written agreement, in that defendant would be obliged to do more, by the oral agreement, than the written agreement provided. Where a written agreement shows a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties is included therein. Parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular term to which the parol evidence is directed. All conversations and parol agreements between the parties prior to the written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the agreement, or showing an intention or understanding different from that expressed in the written agreement. *Decatur Lumber & Mfg. Co. v. Crail,* 350 Ill. 319, 323; *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, 106. Evidence of the alleged oral agreement would not be admissible, as such oral agreement would be inconsistent with the written agreement of the parties and would impose burdens on defendant not contemplated by the written agreement.

Defendant pleaded want of consideration for any oral agreement between the parties. If plaintiff contends that the alleged oral agreement is a separate or collateral agreement between the parties, it must be founded upon a consideration in order to be valid. We agree with defendant that plaintiff has neither pleaded nor proved such a consideration. The record shows that the two paragraphs deleted from the written agreement were intended by them to be deleted. To restore these paragraphs would not be a reformation, but the making of a new contract. On the record presented plaintiff did not show any right to a reformation of the contract. We agree with defendant's contention that plaintiff is precluded from rescission

of the contract because he failed to return the consideration received by him under the agreement and that he elected to affirm the agreement by procuring injunctive relief predicated upon the existence of the agreement. We agree with defendant that the record shows no relationship of trust and confidence between the parties. In making the agreement they dealt at arm's length. Plaintiff was represented by an attorney. There was a full and frank discussion of the transaction. The parties knew what they were doing. The fact that defendant insisted on deleting the two paragraphs and that they were deleted, shows that he did not wish to be bound by such paragraphs.

We agree that neither defendant nor the other respondents committed any act in violation of the temporary injunction. The answers (to the rule) filed by defendant and the other respondents were ample support for the action of the court in discharging the rule. There is nothing in the record to show that the answers to the rule are untrue. For the reasons stated the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

LEWE, P. J., and KILEY, J., concur.