Unique Watch Crystal Company, Inc., Plaintiff-Appellee, v. Harry Kotler, Trading as **LOL** Watch Crystals, Defendant-Appellant.

Harry Kotler, Trading as **LOL** Watch Crystals, Counter-Claimant, Appellant, v. Unique Watch Crystal Company, Inc., Counter-Defendant, Appellee.

Gen. No. 45,351.

Opinion filed June 19, 1951. Rehearing denied July 2, 1951. Released for publication July 5, 1951.

GOLDMAN, ALLSHOUSE & HEALY, of Chicago, for appellant; ROBERT G. DREFFEIN, and MELVIN L. GOLDMAN, both of Chicago, of counsel.

RAPPAPORT, CLORFENE & RAPPAPORT, of Chicago, for appellee; HAMILTON CLORFENE, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff sued for balance of the purchase price claimed to be due on a contract of sale, alleging delivery and performance in accordance with the terms of the contract. Defendant denied the allegations of performance and counterclaimed on the ground that the terms of the contract with respect to good will had been violated. The issues were submitted to a jury and a verdict was rendered against plaintiff on its claim and for defendant on its counterclaim in the

amount of $15,000. Thereafter the court heard argument, set aside the verdict, and entered a judgment *non obstante veredicto* in favor of plaintiff in the sum of $6,589.60. From this judgment defendant appeals.

Both parties are and have been for many years in the business of manufacturing and selling watch crystals, plaintiff in New York and defendant in Chicago. There are three types of watch crystals, one being known as the pressed-glass or cylinder crystal. Plaintiff manufactured this type of crystal, but defendant did not. Desiring to discontinue that part of its business, plaintiff opened negotiations with defendant orally and by correspondence. On December 18, 1948 defendant went to New York to conclude the deal. After an agreement had been reached, he drove with Goldring, president of plaintiff corporation, and his two sons to a bus terminal. They went into a restaurant and there one of Goldring's sons wrote a memorandum on plaintiff's stationery as follows:

"It is agreed between the above and Harry Kotler to purchase all the tools pertaining to the Pressed type of crystals and all stock on blanks and Finished Domes and to include the cuts for catalogue and Goodwill to be based on the following prices:

| | |
|---|---|
| Blanks .......................... | .06 each |
| Finished ........................ | .12 each |
| Grinding Dies ................... | 6.00 each |
| Pressing Outfit ................. | 1000.00 each, |

to include the following:
2 stoves
2 Pressers with attachment

to be packed and shipped by the first of the year, with the understanding that either Mr. Goldring or his workman will come out to guide the assembly.

Deposit of $5000.00 against the purchase. Balance to be paid in full a week after delivery.

(Signed) H. Kotler."

It was admitted in evidence. Three letters were offered in evidence by defendant as follows: 1. A letter from defendant to plaintiff dated December 9, 1948 advising plaintiff that before he would come to New York to negotiate, he wanted to make sure plaintiff would go out of the pressed-glass business and that it would so advise its trade; 2. A letter from plaintiff to defendant dated December 10, 1948 explicitly agreeing to those conditions; 3. A letter of January 1, 1949 signed by plaintiff, announcing to its trade that defendant would thereafter furnish them with pressed-glass cylinder crystals, as defendant had purchased plaintiff's entire stock as well as part of its pressing equipment, and that plaintiff would continue to supply the trade with any other type but the cylinders. The court sustained objections to these letters.

After delivery of the goods other controversies arose concerning quality, the setting up of equipment, whether an oven required for the manufacture of goods, and certain catalog cuts had been delivered in accordance with the contract. However, the principal question involved in the appeal is whether the court properly confined the terms of the contract to the document signed by Kotler on December 18, 1948, and if so, what was meant by "good will." Plaintiff invoked the parol-evidence rule, contending that the document of December 18, 1948 was complete and conclusive on its face; that it covered the question of good will, and that the courts have held that conveyance of good will does not restrict a vendor from continuing in the same business but only restricts him from soliciting old customers. They contend that this definition of good will controls despite the fact that the letters of December 9th, 10th and January 1, show conclusively that it was understood that plaintiff would discontinue the business of making and selling pressed-glass crystals.

The first question to consider is whether the document of December 18, 1948 is of that character which would exclude any extrinsic evidence that might explain or modify its terms. The fact that some writing has been made by the parties for the better recollection of the terms of their transaction does not make it the sole memorial of the transaction. Was the writing meant to supersede all other material? Did the parties intend by that writing to embody their entire intent? (Wigmore, 3rd Ed., Sec. 2400, Par. 5.) Other standards to be considered are apparent completeness and detail of the written agreement, *and aid of counsel in its preparation.* If we examine the writing of December 18, 1948 and consider the circumstances under which it was prepared, it cannot be said that this was a writing of such complete and definitive understanding as to invoke an absolute prohibition of extrinsic evidence. The writing itself shows that much is needed to understand its various terms. It is couched in language characteristic of an unskilled draftsman. There is no detailed description of the tools which were sold nor of all the merchandise. It states in the most general language and without reference to time or conditions that plaintiff or his workman "would come out to guide the assembly." Judged by any fair standards and any realistic conception of dealings between business men without the aid of lawyers, it is clear that this document is not one which should be subjected to a rigid application of the parol-evidence rule. One of the principal reasons for the rule is that where two parties have formally undertaken to set down in writing all their understandings it will be presumed they considered and abandoned any former understandings which were not included within the completed agreement. In this case it is shown conclusively that after the making of the document of December 18, 1948 plaintiff on January 1, 1949, announced to the trade

that it was to go out of the pressed-glass crystal business. Therefore the understanding as evidenced by the previous letters still obtained. This, in addition to the informality of the document and its vagueness in many respects reveals that it was not intended to be a formal and final statement of all the terms of the contract. The case of *Ostrowsky v. Berg,* 337 Ill. App. 422, is cited by plaintiff as support for its position. In that case the contract was prepared by one of the defendants who was a lawyer, and its formal and precise statements reveal essential differences from that of the instant case. Plaintiff also cites *Ginsburg v. Warczak,* 330 Ill. App. 89, where an attorney prepared a seven or eight page written agreement containing an explicit provision that defendant would not engage in a business competitive with that of plaintiff. However, when the parties met to conclude the agreement defendant stated he would not sign it unless that provision were stricken. It was thereupon stricken from the document. Plaintiff sought to testify that nevertheless there was an oral agreement to that effect. Here, of course, the court excluded the evidence. That case is a good example of the proper application of the rule.

 In this case we have a double dosage of the parol-evidence rule. Not only is it contended that the document of December 18, 1948 is conclusive, but it is also contended that in "good will" we have a phrase with but one meaning, which like the Northern Star is "of such constant, fixed and lasting quality," that nothing the parties may have said or done will prevail against it. Plaintiff relies chiefly upon the cases of *Van Bremen v. MacMonnies,* 200 N. Y. 41, 93 N. E. 186, and *Ranft v. Reimers,* 200 Ill. 386. In *Van Bremen v. MacMonnies, supra,* defendant conveyed the good will of a business and the sole question involved was the construction to be given the words without explana-

tion thereof either in writing or in conversation. The court held that the conveyance did not include an obligation to refrain from entering into a competing business. Upon appeal, the court enlarged the injunction by including in it a restriction against solicitation of business from any customers of the former firm. In *Ranft v. Reimers, supra,* the question involved was whether on the sale of a business the vendor could re-engage in business under her own name. Here, also, there was a conveyance of good will but nothing to indicate the intention that it should be construed so as to exclude the use of vendor's name. The court held that the right of a man to use his own name in connection with his business is so fundamental that the intention to divest himself entirely of such right will not be readily presumed but must be shown. The most frequent use of the phrase is in its connection with the name of a product or a business, or in connection with a location to which people have become habituated as a place at which certain goods may be bought. Those are common uses and yet in this case the parties did not intend either of these things. Defendant was to continue to do business in Chicago under his own name and plaintiff to remain in New York. The idea of good will loses its value for these parties if it be given the narrow interpretation urged by plaintiff. Common sense rebels at applying to this phrase of such uncertain meaning a standard set by precedent which would defeat the parties' own intention. "Progress," says Wigmore (Vol. 14, Sec. 2405) "has been from a strict formalism to a liberal and flexible practicality. The mark of primitive legal standards throughout all, is formalism." In other words, an illiterate and untutored people may invest a word or phrase with an absolute meaning and give it mystic independence and automatism but when courts apply this to the affairs of a complex and highly literate society, legal inter-

pretation becomes the subject of vaudeville humor. The courts of Illinois have not followed such formalism. In the case of *Auditorium Association v. Fine Arts Bldg.*, 244 Ill. 532, 91 N. E. 665, the court held that parol evidence was admissible to explain the phrase "demised premises." In *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 133 N. E. 711, the court held that the word "required" had so many and such different meanings that a court would be justified, when a controversy arose, in admitting proof of the circumstances surrounding the parties and the object they had in view at the time the contract was made. In some cases, it is said that a word to be unambiguous must be susceptible of only one interpretation. *Bertlee Co., Inc. v. Illinois Publishing & Printing Co.*, 320 Ill. App. 490, 510; *Schneider v. Neubert*, 308 Ill. 40, 43; *Buchanan v. Swift*, 130 F. (2d) 483, 485. In *Wells v. Carpenter*, 65 Ill. 447, an often cited case, the court admitted parol evidence and quoted from 2 Kent's Commentaries 556: "The true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it."

██ The fundamental question is always the intent of the parties. *Lidgerwood Mfg. Co. v. S. R. H. Robinson & Son Contracting Co.*, 183 Ill. App. 431, 437; *Robinson v. Stow, Admx.*, 39 Ill. 568. In the instant case the parol-evidence rule was used to defeat the true intent of the parties. That rule of evidence, according to the greatest of legal writers on the subject, is a rule of caution: "The truth is that whatever virtue and strength lies in the argument for the antique rule leads not to a fixed rule of law, but only to a general maxim of prudent discretion." (Wigmore, Vol. 14, Secs. 2461–2462.)

■ However, even on the basis of the restricted interpretation urged by plaintiff, to wit: that a conveyance of good will does no more than restrain plaintiff from soliciting its old customers, the court should not have rejected evidence offered by defendant to that effect.

■ ■ As the case must be retried we will state our conclusions with respect to certain other phases of the case. Defendant contended that an oven purchased by him was not delivered, but instead, another and.older one, with new bricks intended to deceive him, was sent him; that catalog cuts were not delivered, that a list of customers given him by plaintiff was incorrect, and that certain glass rods were not delivered as agreed. These are questions of fact on which evidence should be received. With respect to damages, it should be noted that the difference between the actual value of the goods sold and the purchase price ɪs not a proper measure of damages for violation of the agreement to discontinue making and selling pressed-glass crystals. *Stewart v. Challacombe & Ramsey,* 11 Ill. App. 379; *Maren v. Wolmer,* 343 Ill. App. 353; *Bauwens v. Goethals,* 187 Ill. App. 563. It may have been resorted to in order to establish that defendant paid for good will, but in the face of what appears to be conclusive evidence in that respect, we do not see that it is necessary.

■ With respect to the question of rescission, the court should determine whether the breaches of the contract are so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether failure to perform renders performance of the rest of the contract different in substance from the original agreement. *Leopold v. Salkey,* 89 Ill. 412; *Sampson v. Marra,* 343 Ill. App. 245, 256; *John F. Trainor Co. v. Amsinck & Co., Inc.,* 236 N. Y.

392, 140 N. E. 931. Much of the evidence offered by counterclaimant and excluded by the court would have tended to show breaches that were material and substantial. It should be admitted by the court and that question determined on the basis of such evidence.

Plaintiff contends that defendant was obligated to pay the entire balance of the purchase price one week after delivery of the goods and being in default in this obligation he cannot claim damages for a breach of warranty as to the quality of the goods; that his counterclaim admits delivery; that defendant acknowledged this by paying $7,000 January 17, 1949 and another $3,000 February 9, 1949. However, Kotler testified that in a conversation with Goldring on January 15, 1949 he and Goldring agreed that he should receive a credit of $2,121.60 on account of the damaged crystals, that the balance would be paid after performance by plaintiff; that he paid the further sum of $3,000 on February 9, 1949 because plaintiff would not send out a workman "to guide the assembly" unless he did. All this is evidence sufficient to show a waiver of the obligation with respect to time of payment and it excuses defendant from strict compliance therewith.

Defendant asked leave to file an amendment to its counterclaim, setting forth the correspondence herein referred to. In the light of what we have said, this amendment should be allowed.

Plaintiff also contends that by accepting the goods and by later agreeing to a credit for defects in the pressed-glass crystals defendant thereby elected to accept damages, and he cannot now seek a rescission of the contract. Plaintiff, however, itself abandoned the agreement for an allowance of credit for the pressed-glass crystals when it sued for the entire amount of the difference without giving defendant credit therefor. Other events which occurred after the

64

making of the agreement also reveal that defendant, according to his testimony, when informed of the other breaches, decided to stand on rescission.

From an examination of the record it appears clear that the verdict is not sustainable without the evidence which was offered and rejected. Apparently much of this evidence notwithstanding the rulings of the court was heard by the jury, and the inherent difficulties of a jury trial in a case of this character are apparent.

Judgment reversed and cause remanded, with directions to retry the case in accordance with the views herein expressed.

*Judgment reversed and cause remanded.*

FRIEND, J., concurs.