GEORGE H. PAYNE AND MADELINE PAYNE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42717, 42718. Filed June 9, 1954.

*Clyde C. Sherwood, Esq.*, and *John V. Lewis, Esq.*, for the petitioners.

*Edward H. Boyle, Esq.*, and *T. M. Mather, Esq.*, for the respondent.

530

**OPINION.**

Rice, *Judge:* The sole issue for our consideration is purely a factual one; namely, whether the petitioners and the coowner of their newspaper sold a covenant not to compete for $100,000 at the time they sold their newspaper. The respondent contends that they did and that, consequently, petitioners should have treated the allocable shares of the $100,000 as ordinary income rather than as capital gains. Petitioners claim that the $100,000 in issue was merely part of the purchase price of the newspaper stock and that the covenant alone was worthless. They argue that any contract or papers assigning a $100,-000 value to it were executed only to enable the purchaser to treat this ·part of the purchase price of the newspaper as a depreciable capital asset, thus realizing substantial savings in his taxes.

The petitioner submitted into evidence 2 contracts for the sale of the newspaper. The text of the 2 contracts is exactly alike except that one of them reduces the total consideration payable for the capital stock of the newspaper by $100,000 and allocates that amount to the paragraph containing the covenant not to compete. The parties have engaged in considerable controversy as to which document was executed first.

We have found as a fact that petitioner, Kerney, and Hoiles first signed the contract which allocates no part of the purchase price to the covenant not to compete. This document is the only one before us which is signed and agreed upon by all three parties and, thus, is the only contract of sale under which the parties operated.

Respondent also contends that even if we accept this first contract as the only effective one, the subsequent conduct of the parties evidences their intent that $100,000 of the total consideration was being paid for the covenant not to compete. Petitioner's testimony was forthright and direct; his statement that the total consideration was paid for the capital stock seems to us to represent the business arrangement of the parties. The only other witness was the purchaser, Hoiles. He was deliberately evasive and threw little light on the negotiations leading to the newspaper's sale. We do not believe that the purchaser and sellers considered the covenant to be worth over 25 per cent of the total purchase price, or even discussed its actual value, if any. Hoiles was aware that there was little likelihood that either of the sellers would ever compete with him in the Marysville area. The willingness of Hoiles to revise the second document, which assigned a separate consideration to the paragraph containing the covenant, as evidenced by the side agreement and his subsequent letters, indicates that it did not express the true understanding of the parties. The only contract which did accurately reflect their understanding is the first one. It must consequently determine the tax consequences.

We are convinced that the total consideration paid was the agreed-upon price of the stock of the newspaper, and that the covenant not to compete was but an incidental factor meant to assure the effective transfer of the newspaper's goodwill. See *Aaron Michaels*, 12 T. C. 17 (1949). The record clearly demonstrates that the covenant is inextricably linked with the transfer of the corporate goodwill. The pertinent paragraph of the contract states, in part:

SELLER does hereby sell to BUYER all of the good will of the said business actually vested in them, and SELLER agrees that for a term of ten years from the date hereof they nor either of them nor any of them will engage in the newspaper or newspaper publishing business in the COUNTIES of YUBA and SUTTER, * * *

The personal goodwill of the sellers being nontransferable, the goodwill here referred to is obviously that of the corporation. Any value attributable to the covenant is nonseverable from this goodwill. *Harold J. Burke*, 18 T. C. 77 (1952).

The covenant not to compete was never actually dealt with as a separate item in the business transaction, never bargained for, never evaluated. *Gazette Telegraph Co.*, 19 T. C. 692, 704 (1953), affd. 209 F. 2d 926 (C. A. 10, 1954). Any discussions which the parties had about it revolved about whether the buyer should be given a tax advantage which might cause an unfavorable tax result for the sellers, rather than about the actual value of the covenant. Petitioners are

entitled to capital gains treatment on the entire proceeds of the sale of their newspaper stock, its goodwill, and the accompanying covenant. See *Toledo Blade Co.*, 11 T. C. 1079, 1086 (1948), affd. 180 F. 2d 357 (C. A. 6, 1950), certiorari denied 340 U. S. 811 (1950); *Toledo Newspaper Co.*, 2 T. C. 794 (1943).

Petitioner's subsequent correspondence with Hoiles indicates that he had the erroneous impression that his concessions for the latter's tax benefit were binding upon him, even though the second document had not been signed by Kerney. However, Kerney owned 50 per cent of the capital stock of the newspaper; and it is obvious that the only binding contract of sale is the first one, which was executed by the two sellers and the purchaser. In addition, the allocation by the second document of a $100,000 value to the paragraph containing the covenant was mere "window dressing," inserted only to benefit the purchaser tax-wise. It bears no relation to the actuality of the transaction, and even had this contract been executed by all three parties to the sale, it could not affect the taxable result. Taxpayers may so arrange their affairs as to minimize taxation. But once a transaction has crystallized, the tax consequences must depend on substance and actuality rather than form or recited consideration in the contract. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331 (1945); *Gregory* v. *Helvering*, 293 U. S. 465 (1935).

Our ultimate finding of fact that the second document executed on March 15, which assigned a $100,000 value to the covenant not to compete, did not accurately reflect the understanding of the parties distinguishes the instant case from *Clarence Clark Hamlin Trust*, 19 T. C. 718 (1953), affd. 209 F. 2d 761 (C. A. 10, 1954). A contrary finding of fact was the decisive element in our refusal to disturb the allocation to the covenant made by the parties in that case, for we stated, at page 724, as follows:

> Undoubtedly, this Court, in a proper case, is not bound by the parol evidence rule in seeking to determine the tax consequences of a transaction to which the Government is not a party. *Haverty Realty & Investment Co.*, 3 T. C. 161. This does not help petitioners, for after taking into account all of the relevant facts of the transaction and considering the whole record, we have concluded that the written contract accurately reflected the agreement of the parties and that that agreement was reached at arm's length. In the circumstances, it is not incumbent on the Court to disturb the allocation of purchase price made by the parties themselves.

It, therefore, follows that the total consideration was paid for the capital stock of the newspaper.

Reviewed by the Court.

*Decision will be entered under Rule 50.*