Jack Behn, Appellee, v. Solomon Shapiro, also Known
as Sol Shapiro, Appellant.

Gen. No. 46,692.

First District, Third Division.
November 16, 1955.
Released for publication December 19, 1955.

25

Hirsch E. Soble, and Maurice A. Barancik, both of Chicago, for defendant-appellant.

Mural J. Winstin, of Chicago, and Sidney Usow, of Milwaukee, Wisconsin, for appellee.

JUDGE FEINBERG delivered the opinion of the court.

Plaintiff's complaint is for injunction, accounting and reformation of a partnership dissolution agreement. After issues joined, a general reference was had to a master, who heard evidence and recommended the issuance of an injunction, reserving further hearings as to the accounting for damages. Neither the master's report nor the decree made any mention of the reformation of the contract. Obviously, plaintiff has abandoned that portion of the relief prayed for in the complaint. A decree was entered confirming the master's report and re-referring the cause to the master for the purpose of hearing evidence as to the accounting and damages, from which decree defendant appeals.

The decree provided: "That defendant, Solomon Shapiro, also known as Sol Shapiro, his agents, employees, and servants are hereby permanently restrained and enjoined, directly or indirectly from soliciting or attempting to solicit the produce business of or from any of the following persons, firms, partnerships, or corporations," following which is a list in the decree of sixty names of persons, firms, partnerships or corporations. The injunction is limited to the sixty named.

The record of testimony and exhibits is voluminous. In view of the contentions raised upon this appeal, it

26

becomes necessary, for a better understanding of them, to outline briefly the facts appearing in the record, out of which the controversy arose.

For approximately seventeen years the parties were partners in the produce business, which was terminated by a partnership dissolution agreement, the one involved in this controversy. The agreement was drafted by attorney Seidenfeld, representing both parties, who had a personal interest in some of the real estate owned by the partnership and retained it with plaintiff since the dissolution. It is admitted that the first draft of the dissolution agreement, prepared by Seidenfeld, contained the provision that "Shapiro agrees that he will not interfere directly or indirectly in the operation of the said Skokie Produce Co." When this draft was presented for execution, defendant, not represented by other counsel, objected to the above quoted provision, and declined to sign it. Plaintiff's witness, Seidenfeld, testified that he redrafted the agreement, deleting the provision objected to. The agreement, as redrafted, was executed by the parties on July 10, 1953, though the agreement was dated back to June 1, 1953.

Attorney Seidenfeld did not suggest to the defendant that the deletion of the noninterference provision from the agreement would not permit him to solicit previous customers of the partnership, nor did he explain to the defendant or to plaintiff that the sale of "good will" in itself would bar defendant from soliciting previous customers. However, he did tell defendant that he was free to go into a competitive produce business.

The agreement provided, among other things, that "Shapiro sells, transfers and sets over to Behn all of Shapiro's right, title and interest in and to the property, assets, business and 'good will' of said partnership, subject to all partnership debts outstanding and unpaid," which Behn assumed and agreed to pay, and

27

that "Behn shall have the sole right to use the name, style and description of 'Skokie Produce Co.' in all future business dealings and Shapiro shall not use or carry on a business under said name directly or indirectly." Except as to the obligations imposed by the dissolution agreement, the parties executed mutual releases. The agreement provided for the payment of $10,000 in cash and the balance of $40,000 in installments of $500 or more per month, beginning August 1, 1953, evidenced by a promissory note signed by plaintiff and secured by a mortgage on real estate owned by the partnership.

The partnership books and records, as well as financial statements furnished by the partnership to the banks and others, contained no entry or valuation of "good will." The master found that the partnership did not carry good will as an asset upon its records or books of account.

Shortly after signing the dissolution agreement, defendant, together with Lirtzman, a former employee of the partnership, who was discharged by plaintiff on July 17, 1953, engaged in the produce business on the South Water Market under the name of Courtesy Produce Company, and was selling produce in the open market to some of the customers of the former partnership. Plaintiff was aware of defendant's competition as early as July 22, 1953. He testified:

"The next time I seen Mr. Shapiro was a week after July 15th, on a Saturday morning, about seven o'clock at the potato track. I walked up to him and I says, 'Sol, you are wrong.' I says, 'You sold—Julius sold Campbell's some potatoes. They called me first—that is Campbell's Soup Company, and I told them to buy three cars of potatoes from you, because it was way below market price.' I told the buyer of Campbell's Soup to buy from them, from Mr. Lirtzman, if they

28

want to buy below cost. I told that to Sol; and he was on the track."

It further appears from the evidence that substantially all of the items sold by the partnership, and by plaintiff following the dissolution, were cabbages, onions, potatoes, bananas, whatever of these items they could buy and sell. They were brought in on trains in Chicago at 27th Street and Ashland Avenue, where the open market was located. If they could not make a sale at that price they would leave them on the track and abandon them to the railroad for the freight charges, or else lower the price at which to sell. Plaintiff many times abandoned produce to the railroad for freight charges, when he could not get a buyer. During that period there were more than one hundred sellers of produce in that market.

It is clear to us in reading this record, and there is no substantial evidence to the contrary, that the fresh produce of the partnership business was either bought or sold at the track; was what is termed "spot" business; that the sale would depend upon quality, quantity and price; and it was generally not known in advance who the buyers would be, even though former buyers of the produce sold by the partnership would have representatives at the track to examine what was offered for sale. In other words, unlike the sale of nationally known brands, or sales of merchandise made by description or sample, as is present in so much of our commerce, fresh produce dealt in by the partnership was nearly always bought and sold upon inspection at the tracks in the market. We find no showing by plaintiff in the record as to how much business the partnership did with any of the sixty names listed in the decree, or to what extent, if any, sales were made to them in any other way except by inspection and purchase at the tracks. It was stipulated by the parties upon the hearing that none of those listed among the

sixty names in the decree bought exclusively from the partnership.

The master concluded, among other things, that there is no evidence of any kind in the record to show that the parties intended to eliminate from the meaning of the phrase "good will" the right to solicitation of partnership accounts. Thus it will be seen that the master recognized it was important to determine what was intended by "good will." He also concluded:

"This good will included the probability that persons, firms and corporations who had purchased merchandise from said partnership would continue their patronage."

The master also stated:

"In the opinion of the Master, the legal conclusions above set forth are clearly justified by the case of Ranft v. Reimers, 200 Ill. 386."

To sustain the decree, plaintiff argues that the sale of "good will" contained in the dissolution agreement imposes upon defendant the duty not to solicit in any competing business the former customers of the partnership, and that this duty exists, though there is no restrictive covenant in the dissolution agreement not to engage in any competitive business or not to solicit the customers of the partnership. Plaintiff relies chiefly upon Ranft v. Reimers, 200 Ill. 386, as controlling, and Unique Watch Crystal Co. v. Kotler, 344 Ill. App. 54. These cases and other cases cited by plaintiff from other jurisdictions, which approved the view expressed in Ranft v. Reimers, supra, will be presently discussed.

Defendant's principal contentions are that since the dissolution agreement contains no negative covenant against solicitation of customers of the partnership, or against engaging in competitive business, the mere inclusion of the sale of "good will" does not, in and of

30

itself, bar the right of the retiring partner to solicit the customers in a competing business; that there is no evidence in the record that the partnership had any "good will," and none was carried on the books and records of the partnership as an asset; and that the deletion from the final draft of the dissolution agreement of the "noninterference clause" clearly established that the parties understood and intended that defendant could engage in a competing business and would not be barred from soliciting the former customers of the partnership. We shall discuss these contentions in the order stated.

■ The extraordinary remedy of injunction will not be entertained by equity unless substantial damage to a property right is clearly shown. Elder v. Mall, 350 Ill. 538, 541; Nichols v. City of Rock Island, 3 Ill.2d 531, 538; Parkin v. Damen-Ridge Apts., Inc., 344 Ill. App. 301.

"Good will," in the instant case, must be shown to have a substantial value, an asset to the partnership and therefore a property right which requires protection by injunctive relief.

As was said by this court in Altschuler v. Altschuler, 340 Ill. App. 220 (Abst.), reversed (upon other grounds) in 410 Ill. 169:

"Good will is not a tangible asset and not all businesses possess good will. (In re Brown, 242 N. Y. 1, 150 N. E. 581; Securities Realization Co. v. Peabody & Co., 300 Ill. App. 156.)"

The business, in the case cited, had a small office and junk yard. Its product was iron and scrap metal, which was bought and sold. There, too, as in the instant case, good will was not carried upon the books and records of the partnership as an asset and was not included in the partnership statement of account rendered. It was there further said:

31

"There was nothing in the trade name of the dissolved partnership, the site of its business, or its product which could be said to represent good will."

■ We cannot agree with plaintiff's position that the mere inclusion of "good will" in the sale of the partnership interest, without any further showing, ipso facto bars the retiring partner from soliciting former customers of the partnership in a competing business.

We think that Ranft v. Reimers and Unique Watch Crystal Co. v. Kotler, supra, chiefly relied upon by plaintiff, do not support plaintiff's position and are distinguishable from the instant case.

In the Ranft case, it appears that the partnership was engaged in bottling and selling soft drinks. One of the partners sold his interest and good will of the business to the other. The vendor "covenanted to warrant and defend the property sold to complainants, together with this good will." The vendor immediately set up a competing business and began canvassing old customers of the firm, and endeavored to persuade them from continuing to deal with the business of the partnership, and attempted to appropriate the telephone number of the partnership, which had been used in the business and by which "a large part of the orders had been accustomed to come," all for the purpose of destroying and preventing complainants from having the benefit and advantage of what was sold.

It will thus be seen that there was an express covenant to warrant and defend the good will sold. Such a covenant recognizes and presupposes "good will" to exist as part of the partnership assets, and imposes a duty to defend it against any damage, all of which is absent in the instant case. The court held that the breach of such a warranty could be properly enjoined.

On the other hand, it would be difficult to find a more parallel case than Ginsburg v. Warczak, 330 Ill. App. 89. There the parties were partners for sixteen

32

years in the planograph business. This partnership was incorporated with the same partnership interests represented by stock. A dispute arose, and an agreement was entered into for the sale of defendant's stock to plaintiff. The original draft was prepared by the attorney for the vendee. The vendor was not represented by counsel. It provided for the sale by defendant of his stock interest in the business together with the "good will." It further provided that the vendor "would not interfere with the good will of the corporation, and would not, for one year, solicit the business of customers of the corporation; . . . and that defendant would not employ any of the present employees of the corporation, or engage in business competitive to that of the corporation." The vendor refused to sign the agreement with the quoted provisions, and on the face of the agreement the quoted provision was marked "deleted" and initialed by both parties. The vendor, shortly thereafter, engaged in a competing business, hired some former employees of the corporation and solicited its customers and those of the former partnership. It was there sought by injunction to restrain the vendor from soliciting these customers or engaging in a competitive business, and further to reform the dissolution agreement so as to include the deleted provisions, as well as an accounting for damages. There, too, "good will" was not carried on the books and records of the business as an asset. That cause was referred to a master, who recommended the issuance of an injunction, and upon exceptions to the master's report the chancellor overruled the master's conclusions and dismissed the complaint for want of equity. This court, in affirming, said:

"The record shows that the two paragraphs deleted from the written agreement were intended by them to be deleted. To restore these paragraphs would not be a reformation, but the making of a new contract. On

33

the record presented plaintiff did not show any right to a reformation of the contract. . . . We agree with defendant that the record shows no relationship of trust and confidence between the parties. In making the agreement they dealt at arm's length. Plaintiff was represented by an attorney. There was a full and frank discussion of the transaction. The parties knew what they were doing. The fact that defendant insisted on deleting the two paragraphs and that they were deleted, shows that he did not wish to be bound by such paragraphs."

It will thus be seen that in the cited case the mere sale of "good will" did not of itself bar the vendor's right to solicit the customers.

In the instant case had the deletion not been made and the deleted provision that defendant "will not interfere directly or indirectly in the operation of the said Skokie Produce Co." remained in the agreement, it would have had a very material bearing upon the intention of the parties as to soliciting customers of the partnership. It occurs to us that the solicitation of customers by a former partner would certainly constitute important interference with a going business, within the meaning of the deleted clause. If the deletion in Ginsburg v. Warczak, supra, would permit such solicitation, then the broader deleted language in the instant case should be attended with the same result.

In this connection, plaintiff's witness Seidenfeld testified that during the course of the meeting with reference to the signing of the contract with the interference language out of it, plaintiff said that "he was not worried about any competition, at least from Shapiro. . . . He said, 'I am not afraid of competition from Sol Shapiro.' "

Unique Watch Crystal Co. v. Kotler, supra, relied upon by plaintiff, involved the sale of a watch crystal business. The sale included "good will." The court there held that the principal question was what was

34

meant by "good will." It followed the reasoning in Ginsburg v. Warczak, supra.

■ The construction urged by plaintiff upon the term "good will" of necessity involves a form of restraint of trade. The law does not favor restraint of trade, and when a covenant not to solicit customers or not to engage in a competing business is included in a contract, the courts will only sustain it if it is reasonable with respect to time and territory. Wiggins Ferry Co. v. Ohio & M. Ry. Co., 72 Ill. 360; Parish v. Schwartz, 344 Ill. 563, followed with approval in Storer v. Brock, 351 Ill. 643, 647.

We are therefore confronted with the ultimate question: Was there, in the instant case, good will attached to the partnership business, and was this good will an asset and a property right, which should be protected by injunctive relief?

The burden of proving that the "good will" in question was an asset and a valuable property right, and that the business was reasonably profitable, was upon the plaintiff.

In William E. Dee Co. v. Proviso Coal Co., 290 Ill. 252, the court, in considering what constituted "good will," held:

"Although the good will of a business may be of very great value in the probability that old customers of a firm will continue their custom and recommend it to others, the good will has no value merely because the partnership is a going concern unless the business is operated at a profit."

To the same effect, Ahlenius v. Bunn & Humphreys, Inc., 358 Ill. 155, 168; McIlvaine v. City Nat. Bank & Trust Co., 314 Ill. App. 496, 525.

■ Since the decree lists sixty names whom the defendant is restrained from soliciting, it was incumbent upon plaintiff to prove how many sales, if any, were made to the customers listed, in what amount,

35

over what period of time, and whether they were constant customers, frequent customers or merely promiscuous, so that a court could determine whether good will represented a substantial asset and property right. Plaintiff has not met this burden of proof.

█ In Elder v. Mall, supra, where injunctive relief was sought, the court said (p. 541):

"The subject matter of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests."

In Parkin v. Damen-Ridge Apts., Inc., supra, we held (p. 305):

"There is no such showing of a substantial property right as would entitle a court of equity to interfere by injunction."

It further appears in the record that the court entered an order directing that plaintiff deposit with the clerk of the court, to be held by him until the final disposition of the cause, the installment payments due to defendant upon the note of plaintiff secured by the mortgage. The fund is still held by the clerk. Defendant's petition for an order on the clerk to turn over the fund to defendant was denied.

It follows from what we have said the court erred in entering the decree appealed from. The decree is reversed and the cause remanded with directions to enter an order directing the clerk to turn over to defendant the fund in his possession in this cause, and to dismiss the complaint for want of equity at plaintiff's costs.

Reversed and remanded with directions.

LEWE, P. J. and KILEY, J., concur.