RICHARD ULLMAN AND PORTIA ULLMAN (HUSBAND AND WIFE), ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56676–56682.    Filed October 28, 1957.

*Philip A. Brenner, Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, and *Victor H. Frank, Jr., Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Herman Kaiser and Sylvia Kaiser (Husband and Wife), Docket No. 56677; David H. Ullman and Claire W. Ullman (Husband and Wife), Docket No. 56678; David H. Ullman, Docket No. 56679; Richard Ullman, Docket No. 56680; Benjamin Ullman, Docket No. 56681; Benjamin Ullman and Anna Ullman, Docket No. 56682.

134

136

138

OPINION.

OPPER, *Judge:* The numerous cases dealing with covenants not to compete and their tax treatment by the purchasers and sellers of a business, respectively, arise against various factual backgrounds. At the outset, we note a distinction between the sale of a business by its direct owner on the one hand, where goodwill is the property of the vendor and his covenant may well be a contributing factor in the sale of the entire business, e. g. (individuals), *Aaron Michaels*, 12 T. C. 17; *Harold J. Burke*, 18 T. C. 77; (corporation) *Toledo Blade Co.* v. *Commissioner*, (C. A. 6) 180 F. 2d 357, affirming 11 T. C. 1079, certiorari denied 340 U. S. 811, and, on the other, situations where the covenant is the personal agreement of individuals who, as such, have no direct proprietary rights in the goodwill, *Estate of Mildred K. Hyde*, 42 B. T. A. 738, including also transfers of corporate stock accompanied by personal covenants of the stockholders, *Beals' Estate* v. *Commissioner*, (C. A. 2) 82 F. 2d 268; *Helvering* v. *Salvage*, 297 U. S. 106; *Cox* v. *Helvering*, (C. A., D. C.) 71 F. 2d 987, affirming a Memorandum Opinion of this Court dated June 30, 1933; *Gazette Telegraph Co.*, 19 T. C. 692, affd. (C. A. 10) 209 F. 2d 926; *Clarence Clark Hamlin Trust*, 19 T. C. 718, affirmed sub nom. *Hamlin's Trust* v. *Commissioner*, (C. A. 10) 209 F. 2d 761.

Importance from the standpoint of the vendor, of course, lies in the treatment of his negative covenant as the equivalent of affirmative personal services and hence taxation of its proceeds as ordinary income under section 22 (a). See *Beals' Estate* v. *Commissioner, supra; Cox* v. *Helvering, supra.* An apt illustration of this principle is the case where the seller is to supply affirmative services as well as his negative commitment not to interfere with the business. *Christensen Machine Co.*, 18 B. T. A. 256, 257; *Black River Sand Corporation*, 18 B. T. A. 490, 498.

In addition, even where a proprietorship is sold, the existence of a distinct and severable contract separately engendered and bargained for, with a consideration divisible from that relating to the sale of the business, may so nearly constitute a payment for personal services as to be the purchase of a separate asset and correspondingly to give rise to ordinary income wholly divided from the capital gain growing out of the sale of the business. *Rodney B. Horton*, 13 T. C. 143; cf. *Aaron Michaels, supra;* and see *Wilson Athletic G. Mfg. Co.* v. *Commissioner*, (C. A. 7) 222 F. 2d 355, reversing T. C. Memo. 1954-163.

This distinction is supported by the doctrine of the general law that the seller of a business enters automatically into an implied agreement not to interfere with the purchaser's beneficial use of the property received, "Tax Consequences of a Covenant Not to Compete," 27 Taxes 891 (1949) ; specifically not to seek to attract away from the buyer the customers of the business being transferred. "After a voluntary sale, the seller, though he may compete, may not drum up or circularize the customers of the business." Judge (later Mr. Justice) Cardozo in *In re Brown*, 242 N. Y. 1, 10, 150 N. E. 581, 584. This, in fact, is what petitioners did in the present case. And if the three laundry companies had been the makers of such a covenant as in *Toledo Blade Co. v. Commissioner*, *supra*, we might have agreed that no separate covenant was involved but only the articulation of a commitment which would in any event have been implied by the legal effect of the transaction itself. Here, however, the goodwill and customers were the property of the corporation and not of petitioners, *Burnet v. Commonwealth Imp. Co.*, 287 U. S. 415; *Klein v. Board of Supervisors*, 282 U. S. 19, and we know of no principle which carries an implied agreement by a stockholder regarding the goodwill or customers of his corporation. See *Ginsburg v. Warczak*, 330 Ill. App. 89, 69 N. E. 2d 733. Petitioners accordingly were paid for and the vendors secured a contract apart from and beyond the business itself.

The issue here, as it was in all of the cases mentioned, is whether the consideration ostensibly passing to the individual petitioners for their separate agreements not to compete with the buyer is to be taxed to them as ordinary income as contrasted with the proceeds of the sale of their stock in the laundry companies which is concededly capital gain. The goodwill of the laundry companies, as we have said, did not belong to petitioners and it was not an asset that could be transferred by them as individuals.

In the transaction under consideration no title to the property or assets of a going concern passed from one ownership to another. These taxpayers and other owners of stock in the corporation did not sell the property, assets, or goodwill of a going concern. They merely sold stock. The contract for the sale of the stock contained a severable provision in which the sellers of stock covenanted not to engage in the * * * business in a specified area. And it contained separate and distinct provision evaluating the stock and the covenant not to compete * * *. Thus it is clear that the covenant not to compete was severable; that the parties dealt with it separately; and that the amount received for it was specified and therefore is ascertainable. * * * [*Hamlin's Trust v. Commissioner*, *supra* at 765.]

We think, under these circumstances, a heavy burden rests upon the vendor to show that the consideration stated to have been received by him for a covenant without direct relation to the asset transferred is not what it appears to be on the surface of the contracts.

\* \* \* we have concluded that the written contract accurately reflected the agreement of the parties and that that agreement was reached at arm's length. In the circumstances, it is not incumbent on the Court to disturb the allocation of purchase price made by the parties themselves.

\* \* \* the question \* \* \* is not whether the covenant had a certain value, but, rather, whether the purchasers paid the amount claimed for the covenant as a separate item in the deal and so treated it in their negotiations \* \* \* [*Clarence Clark Hamlin Trust, supra* at 724, 725.]

In this case, if anything, the balance of the evidence tips in respondent's favor. Not only was there apparently separate bargaining for the price paid for the covenant, since the original figure of $400,000 was ultimately reduced to $350,000,[2] but the careful language of the covenant permitting petitioners to continue their connection with certain other linen supply companies shows that painstaking care and probably proposals and counterproposals must have contributed to the final text as accepted by both parties. We think it can scarcely be doubted that the covenant not to compete was separately made and separately bargained for, at least as to its terms and probably also as to its price. This is sufficient. As we said in *Aaron Michaels, supra* at 19:

If such an agreement can be segregated, not so much for purposes of valuation as in order to be assured that a separate item has actually been dealt with, the agreement is ordinary income and not the sale of a capital asset.

To this may be added the fact that the buyers testified there could have been a sale without the covenants but for a much smaller price—at a figure, in fact, which closely approximates the total payment minus the recited consideration for the covenant; that both the subsequent history and the terms of the covenant itself demonstrate that competition from petitioners was a real menace; and that petitioners concede that they or their representatives were aware of the possibility of taxation as ordinary income but proceeded with the transaction notwithstanding.

There is nothing in any of the cases to which we have been referred which casts serious doubt on this conclusion. Some are distinguishable. as being direct sales by the proprietor of the business; others, as instances where a lump-sum price for an entire business was the only figure specified by the parties, thus interposing the difficulty of attributing a separate existence if not a separate consideration to the covenant; and a few, as covenants made in favor of the corporation whose

[2] Although there is no evidence of the intervening steps, the burden was on petitioners. And one of them, David, is the only negotiator still able to testify. He could presumably have explained the reduction in price if it had been favorable. *Wichita Terminal Elevator Co.,* 6 T. C. 1158, affd. (C. A. 10) 162 F. 2d 513.

stock was being sold and not, as here, in favor of the buyers who would be the natural beneficiaries of such an agreement.[3]

Upon all the authorities and after careful consideration of the record, we find that the covenant was a separate agreement; that it was reached between the parties in arm's-length negotiations; and that it correctly incorporates the consideration paid for it, which should hence be treated as ordinary income to petitioners.

*Decisions will be entered for the respondent.*

---

[3] A single authority may at first blush appear difficult to conform with the other cases in the field.  *George H. Payne*, 22 T. C. 526.  There, however, we said (p. 530):

We have found as a fact that petitioner * * * first signed the contract which allocates no part of the purchase price to the covenant not to compete.  This document is the only one before us which is signed and agreed upon by all three parties and, thus, is the only contract of sale under which the parties operated.