### CHARLES F. CRAVER

*v.*

### THE ACME HARVESTER COMPANY.

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

APPEALS AND ERRORS—*limit of inquiry where Appellate Court finds the facts in its judgment.* The limit of the inquiry in the Supreme Court, where the Appellate Court reverses a judgment at law without remanding and recites its finding of the ultimate facts in its judgment under section 87 of the Practice act, is whether or not the law was properly applied to the facts so found.

*Acme Harvester Co.* v. *Craver*, 110 Ill. App. 413, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

ARCHIBALD CATTELL, and GEORGE P. CARY, for appellant.

DEFREES, BRACE & RITTER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Charles F. Craver, appellant, brought this suit in the superior court of Cook county against the Acme Harvester Company, appellee, and W. H. Binnian. The suit was discontinued as to Binnian, and there was a judgment against the appellee for $20,750 and costs. The appellee appealed to the Appellate Court for the First District, and the branch of that court reversed the judgment and entered a judgment in favor of appellant, against appellee, for $750, which was not in controversy and had been admitted to be due appellant. The determination of the cause in the Appellate Court resulted from finding the facts different from the finding of the superior court, and the Appellate Court recited in the final judgment a

finding of facts, as provided by statute. From the judgment of the Appellate Court the appellant prosecuted this appeal.

The suit was brought to recover the purchase price or value of the good will and business which the plaintiff alleged that he controlled and transferred to the defendant. The amended declaration contained four special counts. The first count alleged that the defendant, being desirous of purchasing the good will and business controlled by plaintiff, entered into negotiations with him for that purpose; that he agreed to turn over to defendant said good will and business and to enter into defendant's employ; that defendant promised to pay him $75,000 for the good will and business and a salary of $500 per month, and that he complied with the terms of the contract on his part. The second count alleged that plaintiff had been engaged in the manufacture and sale of agricultural implements for harvesting grain, in the western portion of the United States and the various republics of South America; that his name was well known in the South American republics as a maker of such machines, and he had personally acquired and controlled the business therein to the amount of $200,000 per annum, which he was able to and did take with him to whatever firm or corporation he was engaged with, and that in pursuance of negotiations he made a written proposition to defendant to engage in its service and turn over, as far as he was able, the South American business, and if, at the close of the season of 1900, the season had been a fairly good one and proper efforts had been put forth by defendant to complete and sell machines being manufactured at the plant of the Harvester King Company, the good will and assets of which defendant was purchasing, then, if the South American business should amount to $200,000 or more, there should be issued to plaintiff shares of capital stock of defendant equal to one-half the profits arising from said purchase

made by defendant from the Harvester King Company and for the conduct of the business for the season, but not to exceed $150,000, and if the total sales for South America should amount to less than $200,000, and the crop conditions in the United States made it impossible to sell all the machines contemplated, plaintiff would accept stock to the amount of $100,000 or $75,000 in cash, at his option, for the good will and South American trade, so far as his efforts could make the transfer complete, and also for his influence in the United States, and in addition a salary of $500 per month for his services. It was then averred that defendant accepted the proposition and that plaintiff performed his part of the contract. The third count alleged that plaintiff was possessed of certain trade and good will in the sale of harvesting machinery, derived from the sale of the same to certain exporting houses in New York and London, which trade and good will were of the value of $100,000; that plaintiff offered to turn over to defendant, so far as he was able, said trade and good will for $75,000, which defendant undertook and promised to pay him, and that he performed the contract on his part. The fourth count alleged that the plaintiff was possessed of certain trade and good will for the sale of harvesting machinery to certain exporters in New York and London; that he made the written proposition set out in the second count; that defendant accepted the proposition, and promised, in consideration of such trade and good will, to pay plaintiff $75,000, and that plaintiff transferred such trade and good will so far as his efforts could make the transfer complete. The declaration also contained the common counts, and the defendant pleaded the general issue and the Statute of Limitations.

There was no evidence tending to prove any express contract for the sale or purchase of the good will or business, as alleged in the special counts. In January, 1900, plaintiff was employed by the Harvester King Company,

a corporation engaged in the manufacture of harvesters and headers at Harvey, Illinois. That company had been manufacturing a header which was largely sold for the South American trade, and the business had originated many years before with a firm of which plaintiff was a partner. The machines were sold to John Dunn, Son & Co., of New York, and they were shipped to the Argentine republic. The business had been quite large, and at one time as many as twenty-one hundred headers were sold to John Dunn, Son & Co., of New York, in one year. In January the Harvester King Company concluded to close out its business, and plaintiff was given an option on the entire property, capital stock and assets at $87,000, subject to the debts. He sought for a purchaser and negotiated a sale to the defendant, for which he was paid a commission of $5000. He then claimed to own and control the South American business individually, and sent a letter to defendant containing a proposition substantially as stated in the declaration. The defendant declined the proposition in a letter and offered a salary of $400 per month. Upon receipt of the letter declining his proposition plaintiff telegraphed defendant that he considered its proposition an insult and resigned his position with defendant. During the negotiations the defendant was corresponding with John Dunn, Son & Co. for orders for the South American trade. That company was anxious to have plaintiff employed by defendant, and plaintiff endeavored to prevent the defendant from obtaining the order unless it acquiesced in his proposition. After his resignation he did what he could to prevent defendant from obtaining the business, but defendant did receive an order for five hundred machines. It was agreed at the trial that the defendant was indebted to the plaintiff in the sum of $750 for his services from February 3 to March 16, 1900, at the rate of $500 per month, which was the amount for which the Appellate Court entered judgment. The judgment in the superior court was re-

covered on an alleged implied contract of the defendant to pay the value of the good will and business.   Plaintiff claimed that he owned the South American trade as his own property, and that he sold it to defendant and transferred it as far as he was able, while defendant contended that it purchased the good will and business when it purchased the stock and property of the Harvester King Company.

The finding of facts by the Appellate Court, incorporated in its judgment, is as follows: "The court finds that appellee did not own and did not sell and transfer to appellant the good will, trade and patronage of the South American trade so far as he was able, and that appellant did not undertake and promise to pay appellee therefor." The appellee mentioned in said finding is the appellant in this appeal, and the appellant therein mentioned is the appellee in this court.

Under section 87 of the Practice act, the judgment of the Appellate Court is final and conclusive as to all matters of fact.   (Hurd's Stat. 1899, p. 1296.)   The only inquiry in this court is whether the law was properly applied to the facts as found and recited in the finding. (*Jones* v. *Fortune*, 128 Ill. 518; *Hancock* v. *Singer Manf. Co.* 174 id. 503; *Coker* v. *Wabash Railroad Co.* 183 id. 223.) There can be no doubt that the judgment in this case was a proper application of the law to the facts as found.   If the plaintiff did not own and did not sell and transfer to the defendant the good will, trade and patronage of the South American trade so far as he was able, and the defendant did not undertake and promise to pay plaintiff therefor, there could be no recovery of the purchase price or value under any count of the declaration.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*