John W. Hicklin, Plaintiff-Appellee, v. Lawrence F. O'Brien, Defendant-Appellant.

**Gen. No. 10,993.**

Second District.

November 5, 1956.

Rehearing denied November 26, 1956.

Released for publication November 26, 1956.

Pedderson, Menzimer and Conde, of Rockford, for defendant-appellant; L. W. Menzimer and Dale F. Conde, of Rockford, of counsel.

Foltz, Haye & Keegan, of Rockford, for plaintiff-appellee; Frederick H. Haye and Thomas A. Keegan, both of Rockford, of counsel.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

The parties hereto entered into the following written contract, viz.:

## "CONTRACT OF SALE

"Agreement made this 3rd day of August, 1954, between Lawrence F. O'Brien, vendor, and John W. Hicklin, purchaser.

"1. Whereas, vendor has for several years exercised his profession of a lawyer at 119 North Church Street, Rockford, Illinois, and is now desirous of disposing of said practice and the purchaser is desirous of establishing himself as a successor to said practice, having been associated as a lawyer in business with vendor for several years. Now, therefore, the said vendor agrees to sell, and purchaser agrees to purchase the said practice and the good will and benefits thereof together with all the fixtures, furniture, equipment, library, accounts, files and all assets of said law business, in accordance with inventory attached hereto, and located in suite 406–407 North State Building, Rockford, Illinois, under the following terms:

"2. Purchaser shall take possession on September 1, 1954, and shall pay to seller 32½% of the net income from said business for a period of seven consecutive years from said date, payable three times each year, beginning Jan. 1, 1955, and continuing May 1, 1955, and September 1, 1955, and on the same date of each month during the succeeding years until the seven years have expired.

"In addition purchaser shall pay to seller the sum of $2500.00 for the fixtures and equipment as set forth

in inventory attached hereto at the rate of $500.00 per year payable on the first day of each year beginning Sept. 1, 1955, and continuing for four successive years thereafter, without any interest charge.

"Seller will execute the required bill of sale to transfer all items covered by this agreement upon payment in full under the terms as stated herein.

"3. Said vendor agrees not to practice law or act directly or indirectly as a partner or assistant to or with any other lawyer (with exception of purchaser) in Winnebago County.

"4. The firm name of O'Brien and Hicklin shall be maintained during the term of this agreement, however purchaser has the right to include and add the name or names of additional members of the firm and has the right to use said name even after this contract has been paid in full.

"5. It is mutually agreed that if any of the said installments of the purchase price be not paid when due, or if purchaser shall abandon this contract said contract may be rescinded by vendor, and all payments shall be forfeited to said vendor, who shall afterwards be at full liberty to resell said business and assets as inventoried herein. In such event the purchaser obligates himself to seller not to establish a law practice or act directly or indirectly as partner or assistant to or with any other lawyer in Winnebago County for a period of five years after such forfeiture or abandonment."

On September 1, 1955, John W. Hicklin, the purchaser, filed the instant verified complaint, consisting of two counts, in the Circuit Court of Winnebago County. After alleging the execution of the foregoing contract, Count One of the complaint alleged that both parties were lawyers, admitted to practice in Illinois and that O'Brien, prior to August 3, 1954, had employed Hicklin in his law office for several years;

543

that plaintiff took possession of defendant's law office on September 1, 1954, and defendant left Rockford and took up his residence in the state of California; that plaintiff maintained said office under the name of O'Brien and Hicklin, under the terms of the agreement, and on January 1, 1955, prepared a statement of the business done from September 1, 1954, to January 1, 1955, and sent the same to defendant with his check for the amount shown by the statement to be due O'Brien, which statement and check O'Brien received and retained. This count of the complaint then alleged that on or about April 1, 1955, the defendant, without notice to plaintiff, returned to Rockford and, without any acquiescence on the part of the plaintiff, moved into plaintiff's office, took possession thereof and of all the physical equipment and of all books, records, accounts and moneys and, over the protests of plaintiff, has continued to keep possession thereof; that although the plaintiff is willing to account to the defendant under the contract, he has been unable to do so because defendant is in possession and control of all the records and books of the plaintiff and since the return of defendant to Rockford on April 1, 1955, defendant has engaged actively in the practice of law, contrary to the provisions of said contract. This count then charges that unless defendant is restrained from doing so and unless defendant is ordered to turn over to the plaintiff all the books, records, accounts and moneys of the law business known as O'Brien and Hicklin, plaintiff will be irreparably damaged. The prayer of this count is that the defendant be ordered to turn over to plaintiff all records, books and accounts and money of the law practice and business known as O'Brien and Hicklin; that defendant be ordered to account to plaintiff for the money received by him from the maintenance of the law practice after April 1, 1955, and that defendant be enjoined from engaging in the practice of law in Winnebago County, Illinois.

The second count of the complaint was substantially the same as the first, but sought to recover a money judgment against the defendant in the sum of $50,000.

The defendant answered and filed a counterclaim, neither of which are abstracted. By his answer, the defendant, among other things, admitted the execution of the contract which forms the basis of this action, admitted that he left Rockford on or about September 1, 1954, and admitted that plaintiff took possession of the office, rendered an account about January 1, 1955, and sent defendant a check as alleged. The answer then stated that the defendant returned to Rockford on or about April 1, 1955, and to the law office of O'Brien and Hicklin, but averred that he did so upon due notice to plaintiff and with his consent and acquiescence. The answer denied that defendant breached the contract and averred that the contract was terminated and rendered of no effect by the mutual consent of the parties thereto.

A hearing before the chancellor resulted in a decree which found that the plaintiff and the defendant, prior to August 3, 1954, had been associated in the practice of law under the terms of an oral agreement whereby the plaintiff received 32½% of the net income of the office or $125 per week, whichever was greater. The decree also found that on August 3, 1954, the parties entered into the contract hereinbefore set forth and that the plaintiff, on January 1, 1955, accounted to the defendant for the income of said business and practice in accordance with the contract and paid to the defendant 32½% of the net income of the business to January 1, 1955, which defendant accepted; that on or about April 1, 1955, defendant returned to Rockford, re-entered the office where the plaintiff was carrying on the practice of law, announced to the plaintiff that said practice would thenceforth be upon the basis of their relationship prior to the contract of August 3, 1954, and defendant then and there resumed the prac-

tice of law; that plaintiff did not acquiesce in defendant's returning to the City of Rockford and his resumption of the practice of law, did not agree that said law business and law practice would be carried on upon the basis of the oral contract which existed prior to August 3, 1954, and did not agree to the cancellation or annulment of said contract. The decree also found that defendant had no just or legal cause to violate the contract which he breached by engaging in the practice of law in Winnebago County; that said breach has continued from April 1, 1955, to May 4, 1956, the date of the decree and that irreparable damage has been done the plaintiff and he would continue to be irreparably damaged if the defendant continued to practice law in Winnebago County. The decree found there had been no accounting between the parties since January 1, 1955, and referred the cause to the master-in-chancery to state the account and report the same to the court within ninety days. The decree further found that no evidence was introduced in support of count two of the complaint and that the evidence did not sustain the allegations of the counterclaim and that this count two and the counterclaim should be dismissed.

In accordance with these findings the decree restrained the defendant, O'Brien, from practicing law in Winnebago County so long as the plaintiff, Hicklin, should perform the obligations to be performed by him under the contract of August 3, 1954. The decree also provided that when the plaintiff had completed the performance of all the obligations to be performed by him under the contract, the injunction should become permanent and the defendant permanently restrained from the practice of law in Winnebago County. To reverse this decree, defendant prosecutes this appeal.

In this court appellant contends that the contract of August 3, 1954, is void as being in restraint of trade and, therefore, contrary to public policy and that the

performance of the contract requires the plaintiff and him to engage in illegal and unethical practices. Appellant insists that the evidence discloses the plaintiff acquiesced in defendant's breaching the contract and that plaintiff himself breached the contract prior to the alleged breach by the defendant and thereby excused performance of the contract by the defendant. Counsel for plaintiff contends that a contract of sale of a professional practice is not void as being in restraint of trade where the seller agrees not to practice his profession if the restriction in the agreement is reasonable as to the area that it covers, even though it is unlimited as to time and insists that the findings of the decree are sustained by the evidence.

The legal principles governing a case of this character were recently restated by our Supreme Court in Bauer v. Sawyer, 8 Ill.2d 351. There, the court said (p. 354): "The principles governing cases of this kind were stated in Ryan v. Hamilton, 205 Ill. 191, 197, in which a contract by a physician not to engage in practice in a specified community was enforced by injunction: 'That contracts in general restraint of trade are generally held to be illegal is beyond controversy. But the rule admits of well defined exceptions and among the exceptions are contracts of the kind and character presented in this case. Contracts of this class, where the limitation as to territory is reasonable and there exists a legal consideration for the restraint, are valid and enforceable in equity and in such cases relief by injunction is customary and proper.' (See also Storer v. Brock, 351 Ill. 643; Linn v. Sigsbee, 67 Ill. 75.) In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee. Hursen v. Gavin, 162 Ill. 377; Restatement of the Law, Contracts, secs. 515, 516."

547

In the Bauer case, the Supreme Court upheld an agreement whereby a doctor agreed not to practice his profession in the City of Kankakee and within a radius of twenty-five miles therefrom for a period of five years. The Supreme Court held in that case that no injury would result to the public on account of the restriction prohibiting Dr. Sawyer from practicing his profession in the City of Kankakee or twenty-five miles therefrom and that there was no apparent hardship to the doctor himself since the limitations of the agreement as to time and territory were reasonable.

The case of Storer v. Brock, 351 Ill. 643, reviews a number of cases wherein contracts alleged to be in restraint of trade were involved. In some of these cases, there was a restriction as to the length of time the contract was to run, while in others there was no restriction. The case of Linn v. Sigsbee, 67 Ill. 75, is one of the cases reviewed where there was no time limitation and the territory was limited to a radius of six miles. The contract involved was upheld as not being unreasonable, even though there was no time limitation. Ryan v. Hamilton, 205 Ill. 191, was another case involving physicians where one of the parties agreed not to practice medicine within eight miles of his present office for the life of one of the parties to the agreement, but was otherwise unlimited as to time. This contract was upheld as not being unreasonable. Storer v. Brock, 351 Ill. 643, was an action brought by Dr. Storer to recover from Dr. Brock a money judgment, which plaintiff claimed to be due him under a contract, by the provisions of which, plaintiff, a physician, sold his practice to the defendant, also a physician, for $7500, payable in installments. The contract further required Dr. Brock, the purchaser, to pay Dr. Storer (the vendor) $125 a month for two years and $100 a month during the remainder of Dr. Storer's life. Dr. Storer, in consideration of these payments, agreed not to engage in the practice of medicine in the

548

City of Chicago. Dr. Brock failed to make the monthly payments required by the contract and Dr. Storer filed suit. Dr. Brock sought to avoid the monthly payments on the ground that the contract was void as being in restraint of trade. The Supreme Court held otherwise and said (p. 648) : "Dr. Brock contends that the restriction upon Dr. Storer in practicing his profession is unreasonable for two reasons: First, because it is unlimited in time; and second, because it is not sufficiently limited as to space or territory. The decision in Linn v. Sigsbee, supra, is authority that the limitation is not unreasonable because it may extend throughout the lifetime of Dr. Storer. In support of his contention that the restriction is unreasonable because unlimited in time, counsel for Dr. Brock cite Mandeville v. Harman, 42 N.J.Eq. 185, 7 Atl. 37, Rakestraw v. Lanier, 104 Ga. 188, 30 S.E. 735, and Freudenthal v. Espey, 45 Col. 488, 102 Pac. 280. We do not deem it necessary to comment extensively on these cases. In the Freudenthal case the restriction was limited to five years and was held valid. In so far as the other two cases may be taken to hold that a restriction upon the right of a physician to practice his profession, when otherwise reasonable and valid, is void solely because not expressly limited in time, they are not only contrary to Linn v. Sigsbee, supra, but to the apparent weight of authority in this country as shown by the following cases: (citing cases).

"In support of their contention that the restriction in the contract in this case is unreasonable as to place or space since it applies to the whole city of Chicago, which has a population of more than 3,000,000, Dr. Brock's counsel cite no case where a restriction upon the right of a person to engage in a profession, trade or business limited to a city, town or territory less than the whole State has been held unreasonable on such ground. . . . By the contract he (Dr. Storer)

549

is not restrained from practicing his profession at any place in this State outside of the city of Chicago."

The record, in the instant case, fails to disclose that there would be any hardship resulting to the public if the defendant were restrained from practicing law in Winnebago County and since the defendant is not prohibited from practicing law in any of the other counties in the State of Illinois, we do not believe there is any unjust hardship imposed upon him. If he desires to practice law in this state, there is nothing to prevent him from establishing a practice elsewhere than in Winnebago County, and under his contract with the plaintiff he is entitled to receive $32\frac{1}{2}\%$ of the net profits from the plaintiff's law business for seven years. The record shows that the defendant drafted this agreement, and he apparently felt it was fair and equitable at that time and that it did not impose any hardship upon him. We concur in his evaluation of the situation.

The defendant next contends that the performance of the contract entered into by him and the plaintiff requires them to engage in illegal and unethical practices and is contrary to the public policy of this state. The public policy of a state is found in its constitution, its statutes and the decisions of its courts. (Zeigler v. Illinois Trust and Savings Bank, 345 Ill. 180, 193.) No constitutional provision or statute or judicial decision has been called to our attention, nor have we found any which would make the contract in question illegal. It is not necessary for us to determine whether the contract violates some canon of professional ethics.

Finally, it is asserted that the plaintiff acquiesced in the breach of this contract by the defendant, and, also, that the plaintiff himself breached the contract prior to the time that the defendant breached the same and that plaintiff's breach thereby excused performance of the contract by the defendant. The trial

550

court made specific findings on these two points and found both of them against the defendant's contentions. We have reviewed the evidence in this record on these matters and, in our opinion, the findings of the court are amply sustained by the evidence.

The decree of the Circuit Court of Winnebago County is affirmed.

**Decree affirmed.**

CROW and EOVALDI, JJ., concur.