*In re* ESTATE OF ROBERT J. McCUBBIN, Deceased (Donald J. McCubbin *et al.*, Petitioners-Appellants, *v.* Irene McCubbin, Adm'r of the Estate of Robert J. McCubbin, Respondent-Appellee).

First District (4th Division) No. 83—1090

Opinion filed June 21, 1984.

Dann Duff, of Chicago, for appellants.

Levin, Ginsburg & Novoselsky, Ltd., of Chicago (Henry N. Novoselsky, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The issues central to this action are whether the good will attendant to a physician's medical practice and the opportunity to operate the practice for profit survive the physician's death and thus become a part of his personal estate. Dr. Robert J. McCubbin operated a medical practice as an unincorporated sole practitioner. He died intestate in 1970, leaving as his heirs at law his wife, Irene McCubbin, and three children from his previous marriage. Irene was appointed administrator of the estate. During the years after the doctor's death, Irene has operated a medical clinic in the same offices that had been occupied by her husband's practice.

Following a number of events which shall be detailed later in this opinion, the children filed a citation to recover assets, claiming, among other things, that the estate was entitled to the profits realized by the clinic since their father's death and that the clinic was an asset of the estate which should be sold. Irene answered the petition, alleging that no cause of action was stated because the deceased's practice terminated upon his death as a matter of law. Both the children and Irene filed motions for summary judgment. Irene's motion was granted. The children's motion was denied, and they now appeal.

The focus of this appeal thus revolves around whether the good will inherent in the deceased's practice and the opportunity to operate the practice for profit survived the deceased's death. While the two issues are interrelated, the remedies sought in conjunction with each differ. Specifically, the children seek recovery of a sum equal to the value of the clinic's good will at the time of the deceased's death. They also seek revenues received from the clinic following the deceased's death, arguing that an "opportunity to operate the practice for a profit" survived the death of the deceased. While the children make no distinction between these two issues in their appellate briefs, we shall address each issue individually for the purposes of clarity. The following chronology of facts provides the backdrop for our discussion of these issues.

In 1945, the deceased and one Dr. Fitzgerald began practicing medicine together. In 1967, the deceased and Fitzgerald entered into an agreement whereby the deceased received a covenant not to compete from Fitzgerald and bought certain furniture, fixtures, equipment and supplies from him. Both before and after Fitzgerald's exit,

the medical practice catered to patients whose injuries and illnesses arose in the course of their employment (workers' compensation patients), as well as to patients whose injuries were not work related (private patients). In regard to the workers' compensation patients, both Fitzgerald and the deceased advised a number of employers and their insurance carriers that they were available to treat patients for work-related injuries and that they would seek payment from the employers' insurance companies, not the patients. No contract existed between the employers or the insurance carriers and the doctors, however, and the patients were free to visit any doctor they chose. The relationship with the workers' compensation patients differed from that with the private patients only in regard to the party paying the bills.

Following the deceased's death and the appointment of Irene as the administrator of his estate, Irene obtained a court order permitting her to continue the deceased's practice for a period not to exceed six months. Irene, a nurse, hired a number of doctors on a part-time basis to complete the treatment of several patients who had been under the deceased's care prior to his death. Irene also marshalled all accounts receivable. Receipts for the above activities were included in Irene's final account to the estate, which reflected revenues received through May 18, 1971.

Thereafter, Irene received a court order to sell certain items of personal property possessed by the deceased, including medical and office equipment and fixtures. She arranged to buy back these items for her own use.[1] Irene then began operating a medical clinic in the same premises previously occupied by the deceased's practice. The name "The McCubbin Medical Center" remained unchanged, and Irene operated under the same lease as the one that existed prior to the deceased's death.[2] She later purchased the offices outright in 1978.

In late 1971, Irene contacted several employers and insurance carriers to inform them of the nature of the practice at the clinic. The practice has been and is limited exclusively to the treatment of workers' compensation patients. Irene has hired a number of doctors to treat those patients. None of the patients treated by the clinic were treated by the deceased during his lifetime.

---

[1]The propriety of this sale was not challenged by the children in the trial court and is not presently before this court on appeal.

[2]Irene's assumption of the lease or the use of the clinic's name were not issues decided in the trial court's order and are not in issue here.

When Irene presented her final account of the estate's assets in late 1977, the children appeared and objected, claiming that the revenues from the clinic, as well as the clinic itself, were property of the estate. Following a number of events which are not pertinent to this opinion, the children filed a fifth amended citation for the recovery of assets. The citation alleged that the estate was entitled to recover a sum equal to the value of the clinic's good will at the time of the deceased's death. The children further sought to impose a constructive trust upon revenues received by the clinic since the deceased's death and to sell the clinic outright because an "opportunity to operate the practice for a profit" survived the death of the deceased and became a part of the estate. Both the children and Irene presented motions for summary judgment. Following oral arguments the trial court granted Irene's motion, specifically finding that the deceased's practice terminated upon his death. The order further stated that neither good will nor the opportunity to operate the clinic for a profit survived the deceased's death and became an asset of his estate.

■ The primary issue defined by the parties is whether the good will attendant to the deceased's medical practice could legally survive his death and thus become a part of his personal estate. Good will is a species of property (*McIlvaine v. City National Bank & Trust Co.* (1942), 314 Ill. App. 496, 42 N.E.2d 93), and has been described as "the most 'intangible' of the intangibles" (see *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1). The good will of a business is primarily characterized by the personal relationships and customer contacts which the owner of the business has been able to develop. (*McCook Window Co. v. Hardwood Door Corp.* (1964), 52 Ill. App. 2d 278, 202 N.E.2d 36.) It may not be separated from or disposed of independently of the business in which it inheres, and it can have existence only as an incident of a continuing business having locality or name. (*McIlvaine v. City National Bank & Trust Co.* (1942), 314 Ill. App. 496, 42 N.E.2d 93.) Good will is not a tangible asset, and not all businesses possess good will. *Behn v. Shapiro* (1955), 8 Ill. App. 2d 25, 130 N.E.2d 295.

Under Illinois law, "good-will can not exist as to other than purely commercial or trade partnerships or business of that nature, except by special contract *** 'In a business of a professional nature, as that of an attorney or apothecary, the good-will attaches to the person rather than to any other subject ***.' " (*Acme Harvester Co. v. Craver* (1903), 110 Ill. App. 413, 426, *aff'd sub nom. Craver v. Acme Harvester Co.* (1904), 209 Ill. 483, 70 N.E. 1047; see also *Douthart v. Logan* (1899), 86 Ill. App. 294, *aff'd* (1901), 190 Ill. 243, 60 N.E. 507 (the court states the above cited proposition of law and observes *in dictum* that the pro-

fessional practice of a physician does not possess good will absent a special contract).) " 'Good will is not strictly applicable to a professional partnership, for its business has no local existence, but is entirely personal, consisting in a confidence in the integrity and ability of the individual.' " *Cook v. Lauten* (1954), 1 Ill. App. 2d 255, 261, 117 N.E.2d 414, 416.

In the case at bar, the children seek to avoid the application of the above-cited line of case law, which holds that good will cannot exist except in cases of purely commercial or trade businesses. Specifically, the children argue that the deceased's practice was a commercial rather than professional venture because many of the clinic's patients were workers' compensation patients who were referred to the clinic by their employers and because the insurance companies representing those employers paid the patients' bills. The children thus maintain that a workers' compensation patient "is not a patient in the traditional sense [but] merely the subject which is to be inspected for the client, the insurance company." We find these arguments unconvincing.

Initially we believe that regardless of the source of the referrals to the clinic, a doctor-patient relationship existed between the deceased and his patients wherein the patients reposed their trust and confidence in the deceased. The mere fact that these patients were referred to the deceased by their employers did not turn the doctor-patient relationship into a commercial enterprise or transfer the patients into "subjects to be inspected" rather than persons concerned with their health and well being. A personal doctor-patient relationship existed between the deceased and his patients, and we do not think that this professional relationship was in any way eroded because the patients' employers referred them to the clinic or because the bills were paid by insurance companies rather than by the patients.

The undisputed facts before the court during the cross-motions for summary judgment further revealed that the patients were free to visit any doctor they chose and that the clinic operated by Irene never treated any of the same patients who had been treated by the deceased. The record also discloses that while the practice managed by Irene treats only workers' compensation patients, the deceased's practice included a large number of private patients who were not patients of the clinic following the deceased's death. While Irene contacted certain of the employers and insurance companies that the deceased had previously contacted, it would be pure speculation on the part of this court to conclude that her efforts were successful only because she was able to rely upon the good will of the deceased's practice.

We believe that these undisputed facts, taken in conjunction with

one another, amply demonstrate that the deceased's was a professional practice, rather than a business of a commercial nature, that did not continue without change following his death. We therefore find that the Illinois cases holding that good will cannot exist except in cases of purely commercial or trade businesses are applicable to the case at bar. Consequently, we believe that the trial court properly ruled that the children failed to state a cause of action in alleging that the good will inherent in the deceased's professional medical practice survived his death so as to become a part of his personal estate.

We are not persuaded by two cases from other jurisdictions which have been cited by the children in support of their good will argument. *Durio v. Johnson* (1961), 68 N.M. 82, 358 P.2d 703, holds that the good will of an ongoing veterinary medicine partnership may be sold by contract where a covenant not to compete supplies the consideration for the contract. *Durio* is similar to *Hicklin v. O'Brien* (1956), 11 Ill. App. 2d 541, 138 N.E.2d 47, an Illinois case cited by neither of the parties to this action. *Hicklin* upheld a noncompetitive covenant incidental to the sale of an ongoing law practice which limited the geographical area in which the selling attorney could practice.

We think that *Durio* and *Hicklin* are distinguishable from the case at bar for two reasons. First, as we stated earlier, "good-will can not exist as to other than purely commercial or trade partnerships or business of that nature, except by special contract ***." (*Acme Harvester Co. v. Craver* (1903), 110 Ill. App. 413, 426, *aff'd sub nom. Craver v. Acme Harvester Co.* (1904), 209 Ill. 483, 70 N.E. 1047.) Both *Durio* and *Hicklin* involved a special contract of the sort referred to in the *Acme Harvester* case. Both cases involved a written contract which depended upon a covenant not to compete as consideration for the contract. In the instant case, there was no such agreement and the principals concerning upholding or denying relief in a contract case such as *Durio* or *Hicklin* are not presently before this court. Thus, the general Illinois rule that no good will exists in a professional practice applies to this case. The second reason that we find *Durio* and *Hicklin* distinguishable from the instant case is that both cases concerned the ongoing practices of living professionals. However, the decisions we have encountered which addressed the good will of a deceased's professional practice, such as that in the instant case, have held that any alleged good will could not survive the death of the professional and would "simply evaporate." (See *In re Marriage of Fleege* (1979), 91 Wash. 2d 324, 588 P.2d 1136; *Ryman v. Kennedy* (1913), 141 Ga. 75, 80 S.E. 551; *In re Martin's Estate* (1941), 178 Misc. 43, 33 N.Y.S.2d 81; *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1.) Other courts have simply

stated that any alleged good will inherent in a professional's practice dies with the professional. (See *Kremelberg v. Thompson* (1917), 87 N.J. Eq. 655, 103 A. 523; *Rakestraw v. Lanier* (1898), 104 Ga. 188, 30 S.E. 735.) Consequently, we do not believe that either *Durio* or *Hicklin* offer any support for the arguments raised by the children in the case at bar.

The second case which the children cite in support of their argument is *Tessmar v. Grosner* (1957), 23 N.J. 193, 128 A.2d 467. *Tessmar* addressed the value of certain medical charts and records that had been owned by a deceased physician. Good will was not an issue in the case and was discussed only peripherally by the court. Because the children in the case at bar make no argument in regard to the deceased's medical records, we believe that their reliance upon *Tessmar* is misplaced. Therefore, the two cases cited by the children offer no support for this court to circumvent the generally recognized Illinois rule that no good will exists in a professional practice.

The final issue alluded to by the children on appeal is whether "an opportunity to operate the practice for a profit" could survive the deceased's death as a matter of law and thus become a part of his personal estate. The children have offered no support for this contention other than their reliance upon two cases that concern good will and indeed, this court has been unable to locate any such authority. From what we can gather from our review of the children's argument, they essentially contend that the deceased operated a commercial business that continued unchanged after his death and that the estate is entitled to revenues received by the clinic following the deceased's death as well as the physical clinic itself. Other than the recovery sought, we see no distinction between the children's good will argument and their contention that an opportunity to operate the practice for a profit survived the deceased's death. It appears that at least for purposes of this case, the two alleged causes of action are intertwined to such an extent as to be indistinguishable. Because we have found that no good will could survive the death of a professional such as the deceased, we similarly conclude that an opportunity to operate the clinic for profit also could not survive.

For the foregoing reasons, we affirm the trial court's order of summary judgment in favor of Irene.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.