*In re* MARRIAGE OF MARY CATHERINE FOLEY, Petitioner-Appellant, and WILLIAM HENRY FOLEY, Respondent-Appellee.

First District (3rd Division)   No. 86—1251

Opinion filed October 21, 1987.

Dorene Marcus and David I. Grund, both of Chicago, for appellant.

Allen S. Gerrard, of Chicago (Robert P. Sheridan, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The marriage of the parties, petitioner-appellant Mary Catherine Foley and respondent-appellee William Henry Foley, was dissolved by a judgment entered in the circuit court of Cook County on December 20, 1984, at the close of the first part of a bifurcated trial. On October 11, 1985, the court entered a supplemental judgment providing for, among other things, a distribution of marital property. This appeal arises out of the supplemental judgment.

By the terms of the supplemental judgment, respondent was awarded as a portion of his share of the marital property the family business known as Electro-Mechanical Devices (EMD). Petitioner appeals from the trial court's finding that the value of EMD was $225,000. Petitioner contends on appeal that the trial court erred in basing its finding on the opinion of respondent's expert where the expert failed to include a value for the goodwill of the enterprise.

For the reasons stated below, we affirm the judgment of the circuit court.

The evidence at trial indicated the following. The parties were married on September 5, 1959. Five children were born of the marriage. Respondent, along with Harold Dobrikin and Edward Gilman, began the EMD business in 1968. EMD manufactures electronic wire harnesses for the automotive industry. EMD was the parties' major source of income during the marriage. As of April 29, 1985, respond-

ent owned 90% of the stock of EMD and the Foley children owned 10%. The last sale of stock of EMD was in 1981, when respondent purchased the stock held by his partner, Harold Dobrikin. Gilman had sold his stock in the company in 1978.

Robert Greisman, a certified public accountant and attorney, testified as petitioner's expert. Greisman opined that the value of EMD was between $1,013,000 and $1,219,000. Respondent's expert was Charles Schaeffer, a chartered financial analyst and a vice-president in the trust department of Continental Illinois National Bank. Schaeffer testified that EMD had a value of $225,000.

Greisman, petitioner's expert, testified that he arrived at the valuation of $1,016,000 by using a capitalization of earnings method and a goodwill method, and averaging the two calculated figures. Under the capitalization of earnings method Greisman found a valuation of $1,013,600. Under the goodwill method Greisman calculated a valuation of $1,219,000.

Schaeffer, respondent's expert, considered a number of factors in valuating EMD. Schaeffer specifically rejected the valuation methods utilized by petitioner's expert. Further, Schaeffer did not include a value for the goodwill of EMD.

Petitioner argues on appeal that the trial court erred in relying on Schaeffer's inaccurate and incomplete valuation of EMD. Petitioner points to Revenue Ruling 59—60 (Rev. Rul. 59—60, 1959—1 C.B. 237), which provides that the following factors should be considered in the valuation of a closely held corporation: (a) the nature of the business and the history of the enterprise; (b) the general economic outlook and the economic condition of the specific industry; (c) the book value of the stock and the financial condition of the business; (d) the company's earning capacity; (e) the capacity of the business to pay dividends; (f) the existence of goodwill or other intangible assets; (g) stock sales and the size of the block of stock to be valued; and (h) the market price of the stock of corporations in similar businesses.

Petitioner asserts that Greisman's analysis of those factors in Revenue Ruling 59—60 was more comprehensive and accurate than Schaeffer's analysis. Further, petitioner asserts that Schaeffer's valuation is incorrect under Illinois law since it does not include the value of goodwill. Petitioner asserts that goodwill is the value of a corporation in excess of book value, or that value of a going concern over and above the net value of the corporation's tangible assets. Petitioner asserts that book value has been found to be seldom accurate, and a pure book value assessment, without adjustment, rarely equals market value. 2 A. Rutkin, *Valuation and Distribution of Marital Property*

ch. 22 (1985); E. Goldberg, *Valuation of Divorce Assets* ch. 6 (1984); Burke & Rosen, *The ABC's of Valuing Closely Held Corporations*, Fairshare, vol. 3, no. 1 (January 1983).

Petitioner also asserts that the Illinois Supreme Court has held that book value alone should not govern in determining the value of a share. (*Ahlenius v. Bunn and Humphreys, Inc.* (1934), 358 Ill. 155, 192 N.E.2d 824.) Additionally, this court held in *In re Marriage of Kaplan* (1986), 141 Ill. App. 3d 142, 490 N.E.2d 69, that book value was not conclusive, but was only a proper starting point for determining the value of a closely held corporation. The goodwill of a corporation must also be taken into account. 141 Ill. App. 3d 142, 148, 490 N.E.2d 69, 73, citing *In re Marriage of Fleege* (1979), 91 Wash. 2d 324, 588 P.2d 1136 (limited by *In re Marriage of Hall* (1984), 103 Wash. 2d 236, 692 P.2d 175); Rev. Rul. 59—60, 1959—1 C.B. 237.

Petitioner notes Schaeffer's contention that EMD had no enterprise goodwill, since respondent's continued presence in EMD was pivotal to the success of the business. Petitioner asserts, however, that Schaeffer ignored the fact that EMD had 75 employees other than respondent at the time of Schaeffer's valuation. Further, petitioner contends that even if Schaeffer's contentions were correct, the important consideration in a marriage dissolution case is not whether the goodwill of the practice can be sold without the personal services of the respondent to effectuate its transfer, but whether the goodwill has a value to him. *In re Marriage of Fleege* (1979), 91 Wash. 2d 324, 329, 588 P.2d 1136, 1139 (limited by *In re Marriage of Hall* (1984), 103 Wash. 2d 236, 692 P.2d 175), citing *In re Marriage of Foster* (1974), 42 Cal. App. 3d 577, 584, 117 Cal. Rptr. 49, 53.

Petitioner also notes Schaeffer's finding that 70% to 80% of EMD's business is attributable to one customer, namely, Caterpillar Tractor Company. Assuming this finding to be true, petitioner asserts that that fact should have been considered in reasonably discounting the value of the corporation, if necessary, but not to justify Schaeffer's elimination of any value for goodwill. Petitioner contends that the courts of Illinois and other States have begun to recognize the inequity that results when a going concern is valued at the time of dissolution as if it were planning to cease operations, where no evidence of the operation's halting has been shown. (*In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659; *In re Marriage of Davis* (1985), 131 Ill. App. 3d 1065, 476 N.E.2d 1137; *In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 113 Cal. Rptr. 58; *Kowalesky v. Kowalesky* (1986), 148 Mich. App. 151, 384 N.W.2d 112.) Petitioner maintains that at the time of trial, EMD was a financially healthy,

functioning enterprise. There was no evidence presented that respondent intended to sell or liquidate the business, or that he himself would not continue to operate it. Therefore, goodwill existed as an asset of EMD, and its value as an asset should have been included in the valuation of EMD.

Second, petitioner asserts that Schaeffer's valuation erroneously failed to take into account other available and reliable evidence of the value of EMD. Petitioner contends that Schaeffer focused on only one of the factors enumerated in Revenue Rule 59—60, that is, the book value of the stock and the financial condition of the business. Petitioner contends that Schaeffer ignored a prior purchase and sale of stock, which is strong evidence of the value of that stock. That is, petitioner asserts, Dobrikin's sale in 1981 of 50% of EMD stock for $220,000 suggests that the total value of the company at that time was at least $440,000. While Schaeffer's report does not include figures for 1981, his report does show a book value as of December 31, 1982, of $262,000. Petitioner contends that these figures indicate that the book values in 1981 and 1982 "bore no more real relationship to market value than they did at the date of Schaeffer's valuation."

Petitioner asserts that since the trial court based its finding solely upon an inaccurate valuation of a substantial marital asset, the court failed to distribute the total marital estate in just proportions. Petitioner seeks reversal and a remand for a further hearing regarding the value of EMD.

Respondent asserts that the record indicates that Schaeffer considered all the factors set forth in Revenue Ruling 59—60 (Rev. Rul. 59—60, 1959—1 C.B. 237), but that in view of the factors which attend EMD, could not include a value for goodwill, as he found that no goodwill existed. Further, respondent asserts, Schaeffer's valuation method had a sound factual basis. The record indicates that EMD has only seven customers in all. Further, 75% of EMD's business came from a single customer, Caterpillar Tractor Company. Caterpillar suffered its own economic difficulties, which impacted on the profitability of EMD, producing a loss for EMD of $37,000 in 1983.

In his evaluation, Schaeffer also noted that EMD did not have any patents or trademarks. Further, EMD did not have a contract with Caterpillar, but rather conducted business with Caterpillar at will, through use of 90-day purchase orders. Additionally, Schaeffer noted that EMD is only one of five competing companies which supply Caterpillar with the electrical products. Schaeffer concluded based on these facts that EMD had an economic vulnerability that precluded ascribing a premium for goodwill. Schaeffer opined that a willing

buyer would not, in view of the uncertainties and contingencies which affect EMD, pay a premium for goodwill.

Respondent asserts that Greisman's evaluation, on the other hand, was formed through the use of inappropriate methodology. Further, respondent asserts, Greisman apparently relied on documents whose genuineness never was acknowledged by EMD. The value of Greisman's testimony was therefore diminished, to the extent that it was founded on ambiguous indicia. (*Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 131, 336 N.E.2d 338, 345.) Additionally, respondent contends that Greisman failed to consider a comparable sale of the majority interest in Wiretron, a "clone" of EMD which respondent opened in Arizona. Further, respondent contends that the subject evaluation by Greisman is unreliable also, based on Greisman's evaluation of EMD done in 1982. Greisman's 1982 evaluation showed a fair market value for EMD of about $797,000. Greisman testified at trial to a 1983 fair market value for EMD of nearly $1,200,000, despite evidence showing that EMD had suffered a $37,000 loss between 1982 and 1984.

Finally, respondent asserts that Illinois case law fails to support petitioner's assertion that an amount for goodwill be included in every evaluation. Rather, the cases turn upon their individual facts. (*In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 466 N.E.2d 290; *In re Marriage of Reib* (1983), 114 Ill. App. 3d 993, 449 N.E.2d 919.) *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447, held that the goodwill of a corporation should not be valued, since to do so constitutes double recovery under the Marriage Act. Respondent asserts that even *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421, which *Wilder* rejected and which held that the value of goodwill ought to be distributed, did not attempt to create such a requirement for businesses which in reality have no goodwill.

Finally, respondent cites *Estate of O'Connell v. Commissioner* (1981), 81—1 TC 87, which states that statutory and case law direct the trial court to consider all relevant information and methods of evaluation, but grants it broad discretion in determining what method most fairly represents the fair market value of the stock in issue in light of the facts presented at trial. Respondent asserts that in the case at bar, the trial court considered all the valuation evidence and that there was no error or abuse of discretion.

Petitioner replies that Schaeffer erred in concluding that no goodwill exists in EMD. Petitioner contends that Schaeffer improperly applied the definition of goodwill for a professional corporation, such as a law or medical practice, to the instant case. Petitioner contends that

since courts have found goodwill to exist in professional corporations, "the most intensely personal of all business entities" (see *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659; *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421; *Cook v. Lauten* (1954), 1 Ill. App. 2d 255, 260, 117 N.E.2d 414, 416), then goodwill must exist in corporations less dependent upon the professional skills of individuals, such as manufacturing corporations like EMD.

■■ We hold that the trial court acted within its discretion in finding the value of EMD to be $225,000, the figure calculated by respondent's expert, Charles Schaeffer. Further, we find that no error was committed, as Schaeffer's calculation was amply supported by competent evidence. Further, Schaeffer's testimony impeached the testimony of petitioner's expert, Robert Greisman.

■■ In *In re Estate of McCubbin* (1984), 125 Ill. App. 3d 74, 465 N.E.2d 672, this court previously reviewed Illinois law regarding corporate goodwill. *McCubbin* pointed out that the goodwill of a business is characterized primarily by the personal relationships and customer contacts which the owner of the business has been able to develop. (*McCook Window Co. v. Hardwood Door Corp.* (1964), 52 Ill. App. 2d 278, 202 N.E.2d 36.) Goodwill may not be separated from or disposed of independently of the business in which it inheres and it can have existence only as an incident of a continuing business having locality or name. (*McIlvaine v. City National Bank & Trust Co.* (1942), 314 Ill. App. 496, 42 N.E.2d 93.) Goodwill is not a tangible asset and not all businesses possess goodwill. *Behn v. Shapiro* (1955), 8 Ill. App. 2d 25, 130 N.E.2d 295.

■■ In the instant case the evidence shows that Schaeffer did consider the factor of goodwill in his evaluation of EMD. Schaeffer testified that the goodwill of EMD rested with the respondent, with whom all of the customers did their business, rather than in the products or the service produced by EMD. Schaeffer distinguished enterprise goodwill, which he found lacking in EMD, from personal goodwill, which he found to exist in respondent as the owner of EMD. We do not believe that Schaeffer's evaluation of the goodwill of EMD was erroneous under Illinois law. *In re Marriage of Kaplan* (1986), 141 Ill. App. 3d 142, 490 N.E.2d 69; *In re Estate of McCubbin* (1984), 125 Ill. App. 3d 74, 465 N.E.2d 672; *Behn v. Shapiro* (1955), 8 Ill. App. 2d 25, 130 N.E.2d 295.

Further, Schaeffer's valuation was sufficiently supported by the evidence. Schaffer financially analyzed accountant statements and Federal income tax returns of EMD, visited the company facilities in

De Kalb, and interviewed respondent regarding financial details and prospects of the company. He stated that he specifically looked to Revenue Ruling 59—60 (Rev. Rul. 59—60, 1959—1 C.B. 237). He considered all possible factors listed in the revenue ruling in order to come to a conclusion regarding those factors which had some relevance to EMD and which were most important in determining the value of EMD.

Schaeffer admitted that his valuation of EMD contains no dollar amount representing goodwill. Schaeffer stated, however, that he took into account, among other things, the prior sales of EMD stock. He found that the 1981 sale by Dobrikin (of 50% of the stock for $220,000) was based on book value. Further, he found that the future earnings of EMD are directly related to respondent's continuing work for the company. This finding supports his conclusion that the individual respondent is essential to the continuing operation of EMD. Additionally, he looked to the definition of fair market value set forth by the Internal Revenue Service, that is, a price arrived at by a willing buyer and seller, in considering the value of EMD.

Schaeffer explained that he rejected the capitalization of earnings method utilized by petitioner's expert, Greisman, based on Schaeffer's finding that the goodwill rested in respondent rather than within the enterprise of EMD. Further, Schaeffer stated that the ARM 34 calculation method Greisman utilized in his goodwill method of valuation had been rejected by the Internal Revenue Service, the agency that promulgated the method.

Additionally, Schaeffer discounted Greisman's adjustments to EMD's reported inventory, compensation, and overtime expenses. Greisman failed to support with any facts his own figure for inventory, as he failed to take inventory himself. Schaeffer stated that Greisman's adjustment to EMD's 1983 earnings, showing a gain of $165,000, is unjustified. Schaeffer asserted that EMD had suffered a loss in or around 1983 of $37,000. We find that the evidence supports a reasonable conclusion that EMD's reported loss of $37,000 was attributable, at least in part, to the financial problems faced by Caterpillar Tractor during 1983, and that Schaeffer's assertion is justified by the record.

Further, Greisman was impeached regarding his rejection of the use of the recent sale of EMD stock as an acceptable valuation method. Greisman admitted that when a recent sale of stock has indications of being an arm's-length sale, then that sale is the most reasonable method to use to value a company. He admitted that a recent sale of stock shows a company's value more accurately than the capi-

talization or goodwill methods which Greisman utilized. Greisman further testified that he believed that Dobrikin's 1981 sale of EMD stock had indications of not being at arm's length. Greisman stated that the price (50% of the company stock sold for $220,000) was very low in view of the company's "fantastic" return on equities during that time period. Greisman discounted the sale also because he did not have the opportunity to speak to respondent or Dobrikin regarding the circumstances surrounding the sale. On cross-examination, however, Greisman admitted that he had no independent knowledge that Dobrikin had been forced or coerced to sell his stock.

██ ██ We note that the credibility of the witnesses and the weight and inferences to be drawn from the evidence are questions for the trier of fact and not for the reviewing court to decide. (*Palmer v. Poynter* (1960), 24 Ill. App. 2d 68, 163 N.E.2d 851; *Bouillon v. Harry Gill Co.* (1973), 15 Ill. App. 3d 45, 301 N.E.2d 627.) It is for the trier of fact to determine conflict in the testimony of experts. (*St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 179, 298 N.E.2d 289, 299.) However, the weight of an expert's opinion must be measured by the reasons given for the conclusion and the factual details marshalled in support thereof. *People v. Burress* (1971), 1 Ill. App. 3d 17, 272 N.E.2d 390.

We find that in the instant case Schaeffer's valuation was supported by his testimony as to the financial records of EMD, the recent prior sale of stock, and the nonexistence of enterprise goodwill in EMD. The resolution of conflict between Schaeffer's testimony and that of Greisman was within the purview of the trial court and there was no error.

For the reasons stated below, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.