LEE GLADSTONE, Plaintiff-Appellee and Cross-Appellant, v. McHENRY MEDICAL GROUP *et al.*, Defendants-Appellants and Cross-Appellees.

Second District   No. 2—89—0439

Opinion filed April 26, 1990.

Burditt, Bowles & Radzius, Ltd., of Chicago (Steven M. Kowal, of counsel), for appellants.

Kell, Nuelle & Loizzo, of Woodstock (Thomas D. Nuelle, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Dr. Lee Gladstone, brought an action in the circuit court of McHenry County for breach of contract against defendants McHenry Medical Group, a partnership, and the partners, individually. By majority vote of the partners, defendants had deleted a provision of the partnership agreement which provided continuing annual payments of partnership income to plaintiff until age 65. Prior to deletion of the provision, defendants had made payments to plaintiff from 1960 through 1975. The trial court held that the deleted provision was a separate contract severable from the rest of the partnership agreement and, therefore, not subject to the amendatory powers set forth in the agreement upon which defendants relied in deleting the provision. The court entered summary judgment in plaintiff's favor on the issue of liability and denied defendants' summary judgment motion.

Subsequently, the trial court granted plaintiff's motion for summary judgment on the issue of damages and awarded plaintiff damages in the amount of $67,710.63 for the years 1976 through 1979, the year in which plaintiff became 65 years old. The court denied plaintiff's motion for prejudgment interest on the damages pursuant to the Illinois prejudgment interest statute. Ill. Rev. Stat. 1987, ch. 17, par. 6402.

Defendants appeal, contending that the trial court erred in entering summary judgment in favor of plaintiff because the contested provision of the partnership agreement did not constitute a separate contract severable from the rest of the agreement. Plaintiff cross-appeals, contending that the trial court erred in finding that plaintiff was not entitled to prejudgment interest on the damages arising from the separate contract.

About 1946, plaintiff, Lee Gladstone, began practice as a general practitioner in McHenry. Some time prior to 1955, plaintiff began practicing under the name McHenry Medical Group and located his office in a building which he had constructed. Believing that the medical needs of the community could not be fully satisfied by a general practitioner and that it was imperative to have a surgeon in the area, plaintiff formed a medical partnership on January 1, 1955, with Dr. George Alvary, a surgeon. The partnership operated under the name McHenry Medical Group and leased space in the building plaintiff owned.

During the years 1955 to 1960, plaintiff personally secured loans for the expansion of the medical group. Both plaintiff and Dr. Alvary spent a great deal of time in organizing and financing the needs of the group as well as in training the people working for them and in establishing the medical group's reliability. In an effort to build their practice and to maintain good public relations with the community, the two doctors spoke to endless numbers of organizations and made continual house calls and night calls, often making themselves available 24 hours a·day.

Late in the 1950's plaintiff was instrumental in establishing McHenry Hospital, and both he and Dr. Alvary guaranteed the mortgage on the hospital as well as contributed large sums of money to the hospital so that the hospital could function.

On January 1, 1959, plaintiff and Dr. Alvary entered into a new partnership agreement which provided that the net profits of the partnership were to be divided equally between the two partners and that the net losses were to be borne equally by them.

On November 1, 1960, plaintiff and Dr. Alvary amended the articles of partnership of McHenry Medical Group to provide for the admission of Dr. Peter Griesbach, a pediatrician, and for the admission of other physicians into the partnership from time to time. The document was prepared by plaintiff's attorney, who had represented plaintiff for years and who was also acceptable to Doctors Alvary and Griesbach. All three doctors worked closely together in developing the document, putting a great deal of time and thought into the

agreement and bearing in mind that other doctors would eventually be joining the medical group. During the discussions concerning the drafting of the amended document, consideration was given to including a provision which would pay plaintiff and Dr. Alvary a percentage of the partnership profits in compensation for the work and contributions in time and money which the two doctors had expended in building the McHenry Medical Group practice. The provision, section S—2(c), which was included in supplement A to the amendment to the articles of partnership stated:

> "[T]he amount thus credited to the accounts of the various partners (except the single unit account of GLADSTONE and ALVARY) shall be subject to a two (2%) percent charge which shall be immediately credited to a separate single unit retirement account of GLADSTONE and ALVARY to age sixty-five (65) respectively. The two (2%) percent charge is predicated upon the fact that for many years GLADSTONE and ALVARY invested their time and money, frequently working around the clock, seven (7) days a week, in order to develop and build the McHENRY MEDICAL GROUP practice for which they have never been fairly compensated."

Subsequent amendments to the articles of partnership included this provision. All new members of the partnership were extensively briefed on the agreement, including section S—2(c). Each defendant doctor testified at his deposition that when he signed the partnership agreement, he was aware of section S—2(c) and intended to be bound by its terms.

Supplement A to the amended articles of partnership also contained section S—8, which provided:

> "The Partnership Agreement as Amended, together with Supplement A, may be amended at any time by majority vote of the Senior Partners."

Additionally, the 1960 amended articles of partnership contained section 24(c), which stated:

> "Notwithstanding anything herein contained to the contrary, the SENIOR PARTNERS by majority vote shall have full power over all Partnership affairs and its operations."

From 1960 through 1966, the defendant doctors paid the annual payments set forth in section S—2(c) to plaintiff and Dr. Alvary. In a letter dated October 4, 1966, plaintiff informed the defendants of his intention to withdraw from the partnership at the end of 1966. In his letter plaintiff stated, "All benefits under the contract accruing to me are to be fulfilled including the 1% retirement clause to age 65."

On October 14, 1966, plaintiff received a letter from the chairman of the executive committee of McHenry Medical Group, stating, "It is understood that the 1% retirement clause will apply to age 65 or death, if it occurs prior to age 65." Following plaintiff's withdrawal from the partnership, he received payment from McHenry Medical Group in accordance with section S—2(c) through December 31, 1975, at which time the plaintiff was 61 years of age.

On April 18, 1977, plaintiff wrote McHenry Medical Group requesting the payment for 1976. In a letter dated April 25, 1977, the administrator of the medical group informed plaintiff that section S—2(c) had been removed from the partnership agreement as of January 1, 1976, and that there would be no payments for the years subsequent to 1975.

According to the testimony of defendant Dr. Sherman Porter at his deposition, the McHenry Medical Group lost four physicians in 1974, who were to become partners, because of fiscal arrangements set forth in the partnership agreement, including those provided in section S—2(c). Dr. Porter testified that the deletion of this clause and other provisions within the agreement, which were considered "unfriendly to recruiting," were discussed among the partners for some time before the partnership acted upon them.

Defendant Dr. Edward Wilt testified at his deposition that in 1975 the partnership was experiencing some difficulty in keeping the doctors it had and in recruiting new doctors. Dr. Wilt stated that younger doctors, who were unaware of the work plaintiff and Dr. Alvary had done as founders of the medical group, did not understand the continued payments to them and found it difficult to accept the payments. At a partnership meeting in 1976, 11 partners voted to delete the payment provision. The twelfth partner, Dr. Alvary, abstained from the voting.

On September 19, 1978, plaintiff filed a one-count complaint, alleging that section S—2(c) constituted a retirement account and that the benefits of the account were paid annually from deposits made by the partnership into the account. On October 23, 1981, defendants filed a motion for summary judgment, contending that section S—2(c) was a participation in earnings and not a retirement provision, that the provision was subject to the amendatory powers conferred by section 24(c) and section S—8 of the partnership agreement, and that, therefore, the payment provision was properly deleted from the agreement by a majority vote of the partners. Plaintiff filed a response on May 6, 1982, asserting that an issue of material fact existed as to whether the original parties to the agreement intended

that the promise to pay plaintiff and Dr. Alvary to age 65 would be subject to the amendatory power provision. Plaintiff's supporting affidavit and the deposition of Dr. Alvary were attached to plaintiff's response. The trial court denied defendants' motion for summary judgment, finding that there was an issue of material fact to be resolved.

On October 23, 1984, the court granted plaintiff leave to file an amended complaint which contained a second count. Count II alleged that section S—2(c) constituted a separate contract which was severable from the other provisions of the partnership agreement. On December 20, 1985, plaintiff amended his complaint to add a third count. This count did not allege any new cause of action, but it asserted that the individual partners, George Alvary, Edward Wilt, August Rosetti, Nicholas Gemell, Sherman Porter, Robert Stein, Gregory Eckstein, Bernard Miller, Gerard Dominique, Aniceto D'Sousa, Robert Kessler, and Ted Rolander, were liable for the debt to plaintiff.

The defendants filed a motion for summary judgment on counts II and III on December 11, 1986. The plaintiff filed his summary judgment motion on counts II and III on January 9, 1987. After considering the pleadings, the depositions, the motions of the parties and affidavits attached thereto, the memoranda of law submitted by both parties, as well as hearing the arguments of counsel on the motions, the court issued its memorandum opinion on August 24, 1987, granting plaintiff's motion and denying defendants'. In that opinion the court found that section S—2(c) constituted a separate contract severable from the rest of the partnership agreement. The consideration for the payments under this contract was the goodwill of the McHenry Medical Group created by plaintiff's past labor and expense and shared by all incoming partners.

Thereafter, the parties engaged in the resolution of the damage issues. On April 10, 1989, the trial court found that plaintiff was entitled to damages in the amount of $67,710.63 but not entitled to prejudgment interest on those damages.

Defendants filed a timely notice of appeal on the issue of liability, and plaintiff filed a timely cross-appeal on the issue of prejudgment interest on the damages.

■ Summary judgment should be granted only when the pleadings, depositions, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Community Convalescent Center of Naperville, Inc.*

*v. First Interstate Mortgage Co.* (1989), 181 Ill. App. 3d 996, 998.) In construing the legal principles of a contract, summary judgment is an appropriate procedure. (*Village of Fox Lake v. Aetna Casualty & Surety Co.* (1989), 178 Ill. App. 3d 887, 903.) The function of this court in reviewing a grant of summary judgment is limited to the determination of whether the trial court correctly ruled that no genuine issue of material fact has been raised, and if none was raised, whether judgment, as a matter of law, was correctly entered. *Lindstrom v. Houzenga* (1988), 177 Ill. App. 3d 1, 3.

Defendants contend that the trial court erred in entering summary judgment for plaintiff because the law and uncontroverted facts of the case supported a judgment in their favor. In particular, defendants maintain that section S—2(c), providing for payment of a percentage of each partner's profits to plaintiff, did not constitute a contract separate from the partnership agreement. Rather, the entire agreement constituted a single contract subject to the amendatory powers conferred by section 24(c) and section S—8 of the partnership agreement, and, therefore, defendants' deletion of section S—2(c) did not constitute a breach of contract.

We agree with defendants' initial proposition that if section S—2(c), which appears within supplement A of the partnership agreement, is not severable from the agreement, it was subject to amendment by a majority vote of the senior partners of the partnership, as provided in section 24(c) and section S—8. Section 24(c) of the agreement states:

> "Notwithstanding anything herein contained to the contrary, the SENIOR PARTNERS by majority vote shall have full power over all Partnership affairs and its operations."

Section S—8 states:

> "The Partnership Agreement as Amended, together with Supplement A, may be amended at any time by majority vote of the Senior Partners."

In determining the meaning of these two sections, the words used in the provisions must be accorded their plain and obvious meaning. (*Gordon v. Bauer* (1988), 177 Ill. App. 3d 1073, 1088.) Under the plain language of the two provisions, the majority of the senior partners had amendatory power over all partnership affairs and operations as well as the unrestricted power to amend any provision of the partnership agreement and supplement A. Thus, unless section S—2(c) constituted a contract separate from the rest of the partnership agreement, the defendants, as senior partners, had the power to delete it from the agreement.

■ In determining whether a contract is entire or severable, consideration is given to the intention of the parties as manifested by the specific terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances of the particular transaction. (*In re Estate of Parker* (1988), 171 Ill. App. 3d 538, 546; *Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 727-28.) When each and all of the parts of a contract appear to be interdependent and common to one another and to the consideration, the contract should be treated as entire. *Trapkus*, 140 Ill. App. 3d at 727.

The partnership agreement in the instant case was designed to provide for the general operation and affairs of the partnership, McHenry Medical Group, and consisted of the mutual agreement of each partner to the other regarding the practice of medicine. The document addressed, for example, employment of associates, progression to partnership status, a covenant not to compete, vacation policy, withdrawals from the partnership, accounts receivable, purchase of partnership interests and assets, retirement, and participation in earnings. In executing the agreement, the partners accepted all of its terms and agreed to be governed by them.

Section S—2(c), the provision in question, is contained in supplement A of the partnership agreement. The title to supplement A clearly states that the supplement must be included as part of the partnership agreement. The title states:

"This Supplement A to the Amendment to the Articles of Partnership dated as of the 1st day of November, 1960, of the McHenry Medical Group is supplementary thereto and *shall be treated as a part thereof.*" (Emphasis added.)

The partnership agreement also specifically incorporates supplement A. Section 25 of the partnership agreement states:

"Supplement A to this Amendment to the Articles of Partnership is incorporated herein by express reference thereto, and is and shall be treated as a part hereof. The said Supplement A deals with:

(a) Accounts Receivable.

(b) Interests in Partnership Assets.

(c) Participation in Partnership earnings and losses, and other related matters."

Section S—2(c), which directly relates to participation in earnings, represents one of the provisions specifically enumerated and incorporated by section 25. It provides:

"[T]he amount thus credited to the accounts of the various

partners (except the single unit account of GLADSTONE and ALVARY) shall be subject to a two (2%) percent charge which shall be immediately credited to a separate single unit retirement account of GLADSTONE and ALVARY to age sixty-five (65) respectively. The two (2%) percent charge is predicated upon the fact that for many years GLADSTONE and ALVARY invested their time and money, frequently working around the clock, seven (7) days a week, in order to develop and build the McHENRY MEDICAL GROUP practice for which they have never been fairly compensated."

Notably absent from section S—2(c) is any statement that it is a contract independent of the remainder of the partnership agreement. To determine that the provision constitutes a contract separate from the rest of the agreement, it would be necessary to conclude that the partners agreed to be bound by section S—2(c) regardless of whether the partnership earned revenue, or existed at all. We find it unlikely the partners would assent to making payments to plaintiff irrespective of whether the partnership existed and operated. Moreover, plaintiff admitted this fact in his response to defendants' summary judgment motion and also admitted that the amounts to be paid under section S—2(c) depended upon the operation of the partnership.

Despite these admissions, plaintiff maintains that the partners who joined the partnership after November 1, 1960, the date on which the partnership agreement was drafted, promised to pay plaintiff for the efforts he expended in the organization and development of the medical partnership prior to 1960. In essence, plaintiff is contending that the particular consideration set forth in section S—2(c) is plaintiff's past performance.

■ Generally, if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract. (*Worner Agency, Inc. v. Doyle* (1985), 133 Ill. App. 3d 850, 856-57.) Section S—2(c) explicitly states that the reason for the payment provision was the plaintiff's efforts prior to the establishment of the partnership agreement on November 1, 1960. None of the defendant doctors were partners prior to that date, and, thus, the efforts cited by plaintiff in section S—2(c) occurred prior to any promise or agreement by the partners.

Also, plaintiff testified at his deposition that the additional compensation provided in section S—2(c) did not constitute the reason for the prior efforts plaintiff expended in establishing and developing the business, nor was any such provision contemplated at the time the work was being performed.

Nevertheless, plaintiff maintains, as did the trial court, that the particular consideration set forth in section S—2(c), *i.e.*, plaintiff's past efforts in establishing the medical group, is found nowhere else in the partnership agreement and, consequently, supports plaintiff's contention that the payment provision is a separate contract from the rest of the agreement. This contention, however, ignores the fact that the November 1, 1960, partnership agreement contains the following recital:

> "Any seemingly preferential treatment accorded GLAD-STONE and ALVARY hereunder is in recognition of their many years of effort in the organizing of the McHENRY MEDICAL GROUP and in its development, for which GLAD-STONE and ALVARY have not been adequately or fairly compensated."

In addition to the "preferential treatment" accorded plaintiff and Dr. Alvary in section S—2(c) of the agreement, such treatment is also bestowed upon them in other provisions of the agreement. For example, section 7(b) provides that plaintiff and Dr. Alvary shall each have five additional votes in determining partnership policies and operations because of the services rendered by them prior to November 1, 1960. Section 14(b) provides that plaintiff and Dr. Alvary shall each have two extra weeks of vacation. Section 20 provides the two doctors with the power to veto any decision to terminate the partnership, and section S—6(b) of supplement A to the agreement provides that the two doctors will be exempt from any reduction in the crediting of amounts collected on accounts receivable after termination of partnership status.

If we were to agree with the lower court's conclusion that plaintiff's past efforts constituted the consideration for section S—2(c), making it a contract severable from the rest of the partnership agreement, then sections 7(b), 14(b), 20 and 6(b) should also be separate contracts. Such a decision, however, would have the effect of judicially creating a series of subcontracts rather than the agreement which plaintiff admitted was agreed to as a "unified whole."

■■ ■ We note that the trial court stresses in its memorandum opinion that it is not plaintiff's past efforts which constitute the consideration for the separate contract set forth in section S—2(c) but, rather, the "culmination" of those past efforts, *i.e.*, "the good will of the McHenry Medical Group." We, however, consider this determination an attempt by the court to reach an equitable solution to what the court perceived as an unfair act by the partners, *i.e.*, the deletion of section S—2(c). Nevertheless, a contract must be enforced accord-

ing to its terms or not at all (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797), and a court may not rewrite a contract to suit one of the parties but must, instead, enforce the terms as written. (*A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 329.) Here, where plaintiff admitted that the partnership agreement, including supplement A of which section S—2(c) was a part, was designed to govern all the affairs and operations of the medical partnership and was agreed to as a unified whole, where other sections within the agreement also set forth the type of preferential treatment towards plaintiff and Dr. Alvary as was set forth in section S—2(c), and where the partnership agreement recited at the very outset that such preferential treatment was due to the past efforts of plaintiff and Dr. Alvary in organizing and developing McHenry Medical Group, we believe the trial court erred in finding that section S—2(c) was a separate contract not subject to the amendatory powers established in the agreement. In so finding, the trial court remade the agreement to suit plaintiff.

We conclude that section S—2(c) was not a separate contract but a part of the partnership agreement and therefore subject to deletion by a majority of the senior partners under the amendatory powers established in the agreement. Accordingly, we find that the trial court's grant of summary judgment in plaintiff's favor on the issue of liability was improper. Because of our decision on this issue, it is not necessary to review plaintiff's cross-appeal concerning denial of prejudgment interests.

In light of the above, the judgment of the circuit court of McHenry County entering summary judgment in plaintiff's favor on the issue of liability is reversed. This cause is remanded with directions that the trial court enter judgment in favor of defendants.

Reversed and remanded with directions.

McLAREN and REINHARD, JJ., concur.