909 F.2d 1486
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Pearson R. CROSBY, Plaintiff-Appellee,
v.
Ronald A. GULLSTRAND, Defendant-Appellant.
 No. 89-3270.
 United States Court of Appeals, Seventh Circuit.
 Argued June 20, 1990.
Decided July 31, 1990.
 
 Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 The defendant-appellant Gullstrand in this diversity contract case governed by Illinois laws appeals from the district court judgment on matters relating to the enforceability of a contract for the sale of a law practice. The district court held that the attempt to sell the goodwill of the law practice was unenforceable as contrary to public policy, but that the rest of the contract was severable and enforceable. In addition, the court held that Gullstrand's affirmative defense of fraud in the contract had been waived. Gullstrand challenges both of those determinations on appeal.
 
 I. FACTS
 
 2
 This action originated in the district court when Crosby filed a suit seeking enforcement of the contract because Gullstrand had stopped making the payments required in the contract. The contract at issue provided that Crosby would transfer all cases and files to Gullstrand, as well as the law library, office equipment, and office lease in return for a specified price. That purchase price was allocated individually to the following items: office equipment and furniture; law library; five year, fifty-mile radius covenant not to compete; and goodwill. In addition, the agreement provided that Gullstrand would pay Crosby 1/3 of net fees collected by Gullstrand from the probate of estates that might arise from a list of wills given to him.
 
 
 3
 The district court held that the complaint was unenforceable to the extent that it sought payment pursuant to the sale of a law practice;[1] as a result, the attempt to sell the goodwill and the fee-sharing agreement were held unenforceable. Although a contract that is contrary to public policy is unenforceable, the court held that the remainder of the contract could be enforced because it was severable from the sale of the goodwill and the fee-sharing agreement. The court rejected Gullstrand's contention that he was fraudulently induced to enter into the contract, and entered summary judgment for Crosby.
 
 
 4
 On appeal, Gullstrand asserts that the essence of the contract was the sale of the law practice, and that the entire contract is unenforceable as violative of public policy. In addition, Gullstrand repeats his fraud argument that was rejected by the district court.
 
 II. ANALYSIS
 
 5
 The initial issue on appeal is whether any provisions of this contract are contrary to public policy. The Illinois Supreme Court has held that the public policy of Illinois is reflected in the constitution, statutes, and judicial decisions. O'Hara v. Ahlgren, Blumenfeld and Kempster, 127 Ill.2d 333, 537 N.E.2d 730, 734 (Ill.S.Ct.1989). The district court relied upon canons of ethics and ethics opinions in determining that the sale of a law practice was against public policy. Those canons and opinions are not directly declarative of public policy, but some Illinois appellate courts have used them as providing guidance regarding public policy. See, e.g., Marvin N. Benn & Associates v. Nelson Steel & Wire, Inc., 107 Ill.App.3d 442, 437 N.E.2d 900, 903 (1st Dist.1982); Schniederjon v. Krupa, 130 Ill.App.3d 656, 474 N.E.2d 805, 809 (5th Dist.1985).
 
 
 6
 Ethical opinion 239, relied upon by the district court in determining public policy, declared that "[a] lawyer's practice, in terms of the business of his clientele and 'goodwill', is not an asset which may be sold or offered for sale." The opinion cited Canons 27 and 37, which addressed the issues of solicitation of clients and client confidences in the context of a sale of a practice. That opinion supports the district court's decision, but is not alone sufficient to establish the public policy of Illinois.
 
 
 7
 Analysis of Illinois caselaw and the Illinois Code of Professional Responsibility (the Code), however, indicate that aspects of this contract violate public policy. In O'Hara, the Illinois Supreme Court identified a number of considerations which indicate that a fee-sharing agreement violates public policy. For instance, if the person referring the case assumes no responsibility for the case, there is a danger that the referral will be based more on a concern for financial gain than on the client's welfare.[2] 537 N.E.2d at 735. The court declared that "[t]he public is best served ... by recommendations uninfluenced by financial considerations." Id. The court also noted that the attorney to whom the case is referred may be tempted to devote less time and attention to cases of clients under fee-sharing arrangements. Id. Moreover, Rule 2-107 prohibits an attorney from dividing legal fees in a case except: 1) in proportion to services rendered by each attorney; or 2) in cases of referral fees, after disclosure to the client and assumption of legal responsibility for the case as if he were a partner of the receiving lawyer.[3]
 
 
 8
 The contract in this case provides that Crosby is to receive one-third of the proceeds of any legal work arising from wills which he drafted. That fee is unrelated to any legal work which Crosby performed in the settlement of any estates, and thus can be justified under Rule 2-107 only if it meets the requirements regarding referral fees. Neither the record nor the parties' arguments in this case indicate that the clients were informed of this arrangement. Therefore, this provision clearly violates public policy as set forth in Rule 2-107 and O'Hara.
 
 
 9
 Judicial decisions in Illinois also indicate that the attempt in the contract to transfer clients from one attorney to another is violative of public policy. In Corti v. Fleisher, 93 Ill.App.3d 517, 417 N.E.2d 764 (1st Dist.1981), the Illinois appellate court held that an agreement for the transfer of clients without the permission of the clients was void and contrary to public policy. That case involved an agreement between an attorney and his employer-law firm which provided that upon termination of his employment, he would receive the files of all clients which he indirectly referred to the firm. The court noted that the attorney did not allege an attorney-client relationship with those clients prior to the transfer of files, nor did he demonstrate client consent to his "ownership" of their files. 417 N.E.2d at 768. The court held that the agreement deprived clients of their right to be represented by the counsel of their choice. The contract in this case similarly provides for the transfer of clients to an attorney with no pre-existing attorney-client relationship and with no provision for client consent. As a result, the contractual provisions effecting the transfer of the clients are unenforceable as contrary to public policy. As the Corti court declared, "[a] contrary decision would allow clients to be unknowingly treated like objects of commerce, to be bargained for and traded by merchant-attorneys like beans and potatoes." 417 N.E.2d at 769.
 
 
 10
 Although Corti was decided before the Illinois Supreme Court adopted the Code of Professional Responsibility, the Code supports the determination that the transfer of clients without consent is contrary to public policy. For instance, Rule 4-101 prohibits an attorney from revealing confidences or secrets of clients unless the client consents after disclosure (with certain exceptions immaterial to this case). The contract in this case contains no provision for client consent, and the record does not indicate that any such contact was made or that the transfer of the files was for custodial purposes only. In fact, the contract itself contains a number of provisions evidencing a contrary intent. For instance, it provides that Seller will assist Purchaser in his disposition of the cases where necessary, that Purchaser upon collection of legal fees for pending cases will pay Seller the amount still owed, and that Seller will receive one-third of the proceeds from legal work arising out of wills. All of these provisions envince an intent that Gullstrand will essentially pick up where Crosby left off in handling the legal cases in the office. This private arrangement to transfer clients from one lawyer to another is a blatant violation of client confidences, and is proscribed by Rule 4-101.[4]
 
 
 11
 Because the transfer of clients as achieved in this contract is contrary to public policy, provisions of the contract effecting that transfer are unenforceable. The contract does not specifically allocate any value to the transfer of the clients, but the district court essentially found that the allocation for goodwill included the unenforceable aspect of the contract--which the court had described varyingly as the sale of a law practice or as the use of clients as consideration. The court held that the rest of the contract was severable from the illegal aspect, and thus enforceable. We do not agree that those provisions of the contract are severable.
 
 
 12
 First, the value of the transfer of client files cannot clearly be attributed wholly to the goodwill provision. Goodwill in this case may include simply the right to utilize Crosby's name and professional reputation, as provided in provision 13 of the contract, or may be read broadly as including the transfer of the files and the cases. Gullstrand was required to pay only one dollar for the goodwill in this case, although the transfer of clients was clearly a significant aspect of the contract as evidenced by the lists of clients in Exhibits I, II, and IV, and by reference to the transfer in provisions 1, 2, 3, 4, 6, 7, and 8 of the contract. On the other hand, the covenant not to compete was valued in the contract at $7,499.00. This discrepancy suggests that the amount allocated to the covenant not to compete included the value of transferring current clients to Gullstrand, while goodwill retained its common meaning as "the probability that old customers of a concern will continue their custom and recommend it to others." O'Hara, 537 N.E.2d at 735. A number of cases have recognized that covenants not to compete often include provisions regarding the transfer of clients. For instance, restrictive covenants by lawyers upon departure from a law firm often contain provisions requiring the lawyer to leave all existing client files with the firm. See e.g. Cohen v. Graham, 722 P.2d 1388 (Wash.App.1986); Dwyer v. Jung, 336 A.2d 498 (Sup Ct N.J.1975) (restrictive covenant is an attempt to control the "client market").
 
 
 13
 Second, regardless of how the transfer of clients is valued, the district court erred in determining that the illegal portion of the contract was severable from the contract as a whole. In Gladstone v. McHenry Medical Group, 553 N.E.2d 1174 (Ill.App.1990), the court set forth the test for determining severability:
 
 
 14
 In determining whether a contract is entire or severable, consideration is given to the intention of the parties as manifested by the specific terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances of the particular transaction.... When each and all of the parts of a contract appear to be interdependent and common to one another and to the consideration, the contract should be treated as entire.
 
 
 15
 553 N.E.2d at 1179.
 
 
 16
 The intention of the parties in this case clearly was to sell a law practice. Although the contract specifically allocated the purchase price on an individual basis, the individual parts of the contract had meaning only in the context of the sale of the law practice and the corresponding transfer of clients. The essence of the contract was the sale of clients, and the sale of books and furniture was merely incidental to that sale. Moreover, the interrelationship between goodwill and restrictive covenants is well-documented. See Dwyer, 336 A.2d at 499; Dugan v. Dugan, 92 N.J. 423, 457 A.2d 1, 4 (1983); Minkus, The Sale of a Law Practice: Toward a Professionally Responsible Approach, 12 Golden Gate Univ.L.Rev. 353, 376 (1982); Sterrett, The Sale of a Law Practice, 121 Univ.Pa.L.Rev. 306, 316-18 (1972). In In re McCubbin, 465 N.E.2d 672 (Ill.App.1984), the court declared that the general Illinois rule is that no good will exists in a professional practice except by special contract such as a covenant not to compete. 465 N.E.2d at 676. That rule means that the covenant not to compete was essential to the provision for the sale of goodwill, and thus inseparable from that aspect of the contract. We hold that the parts of the contract had the common purpose of effecting the sale of the law practice, and thus no part is severable from the contract as a whole. Because aspects of that sale are contrary to public policy, the entire contract is unenforceable.
 
 
 17
 ACCORDINGLY, we REVERSE the judgment of the district court and REMAND with directions to dismiss.
 
 
 
 [1]
 The district court held that the sale of a law practice is contrary to public policy (see Order of September 28, 1989, referring to magistrate recommendation of July 5, 1988 which was adopted July 29, 1988), apparently based upon the Illinois Canons of Professional Responsibility
 
 
 [2]
 O'Hara involved a referral by a layperson of clients from a deceased attorney's practice
 
 
 [3]
 The Illinois Code of Professional responsibility is set forth in 107 Ill.2d and in IllRev.Stat. ch. 110A, Secs. 1-101 through 9-102
 
 
 [4]
 The transfer of clients may also violate Rule 2-107, which prohibits an attorney from dividing legal fees for the referral of clients unless the client is informed of the arrangement. The contract explicitly provides for the transfer of client files, including a number of pending legal cases, and this transfer constitutes consideration for the contract. As such, the performance of the contract is a payment for the referral of clients, and contrary to the purpose if not the language of Rule 2-107. See also Rule 2-103(d)